CONSOLIDATED INDUSTRIES, INC., Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 98–5167.

United States Court of Appeals, Federal Circuit.

Nov. 4, 1999.

Howell Roger Riggs, Gulf Shores, Alabama, argued for plaintiff-appellant.

Brian Banes, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued for defendant-appellee. With him on the brief were David W. Ogden, Acting Assisting Attorney General, David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director.

Before RADER, Circuit Judge, FRIEDMAN and ARCHER, Senior Circuit Judges.

FRIEDMAN, Senior Circuit Judge.

This appeal challenges a decision of the Court of Federal Claims that upheld a contracting officer's default termination of the appellant Consolidated Industries, Inc. ("Consolidated")'s government contract for failure to meet the contractual delivery schedules. We affirm.

I

The pertinent facts, as set forth in the opinion of the Court of Federal Claims and in the record, are undisputed.

In March 1988 Consolidated entered into a contract with the Army to produce battery assemblies for an anti-tank weapons system. The contract had been set aside for a small business concern (which Consolidated was, Tr. 84–85), pursuant to Section 8(a) of the Small Business Act, 15 U.S.C. 637(a) (1988). The government issued a number of orders for delivery of specified numbers of assemblies on speci-

fied dates, and made progress payments to Consolidated during the performance of the contract.

Between 1988 and 1993 Consolidated failed to meet several delivery dates, which were extended. The government also found flaws in some of the battery assemblies that Consolidated produced.

In October 1994, the parties agreed to modify the contract, which was provided by a written modification ("the Modification") under which:

1. Consolidated agreed to ship 1800 battery assemblies "in order to liquidate progress payments" already made. Sixty were to be shipped in January 1995, 100 a month from February 1995 to June 1996, and forty in January 1996.

2. The parties agreed to a no cost termination of the balance of the contract.

The Modification included the following provisions:

> The contractor unconditionally waives any charges against the government arising under this order/contract or by reason of cancellation, including, without limitation, all obligations of the government to make further payments or to carry out any further undertakings under the cancelled portion of the contract. The government acknowledges that the contractor has no obligation to perform further work or services or to make further deliveries under the cancelled portion of the contract. Nothing in this paragraph affects any other covenants, terms, or conditions of the contract.

> The parties agree that this modification constitutes full, final and complete settlement, satisfaction and accord for any and all claims arising out of this order/contract, whether past or present.

Consolidated failed to make the January and February deliveries the Modification required, and the contracting officer terminated the contract for default. The contracting officer made detailed findings about the performance of the contract and her reasons for termination. The contracting officer described her consideration of seven specific factors the Federal Acquisition Regulations ("FAR") require a contracting officer to consider in determining whether to terminate for default. As those regulations required, the Commanding General of the military entity involved (General Link) approved the default termination.

Consolidated then filed the present case in the Court of Federal Claims seeking to convert the default termination into one for the convenience of the government. It sought damages of $2,417,494.13, based on the government's alleged breach of the contract. The government filed a counterclaim for $515,062.12, covering the progress payments Consolidated had failed to liquidate by delivering battery assemblies pursuant to the Modification.

After trial, the Court of Federal Claims held that the contracting officer properly had terminated the contract for default and dismissed the complaint. The court ruled that the Modification constituted an accord and satisfaction of Consolidated's "claims of increased costs due to alleged defective specifications," and that "the Contracting Officer exercised reasonable discretion in terminating a contract for default." With respect to the government's counterclaim for unliquidated progress payments, the court stated that Consolidated "conceded the outstanding progress payments, and stated at trial that it has no defenses if we rule that the modification acted as an accord and satisfaction. We grant defendant's counterclaim on the basis of that representation."

## II

■ The contract incorporated the standard default termination provision contained in FAR section 52.249–8, which permits such termination for specified defaults by the contractor. *See* 48 C.F.R. § 52.249–8. The contracting officer has broad discretion to determine whether to terminate a contract for default and we will only overturn that decision if it is "arbitrary, capricious or constitutes an

abuse of discretion." *McDonnell Douglas Corp. v. United States,* 182 F.3d 1319, 1326 (Fed.Cir.1999) (citing *Darwin Constr. v. United States,* 811 F.2d 593, 598 (Fed. Cir.1987)). We agree with the Court of Federal Claims that the contracting officer's decision to terminate this contract for default "was not arbitrary, capricious, or an abuse of discretion."

■ The default for which the contracting officer terminated the contract was "the specific failure of the contractor to meet the contractual delivery date of 30 Jan 95 and 28 Feb 95" agreed to in the Memorandum. As the Court of Federal Claims noted, "[t]he Government may terminate a contract for failure to deliver supplies within the time specified in the contract." FAR § 52.249–8(a)(1) ("The Government may ... terminate this contract ... if the contractor fails to(i) Deliver the supplies ... within the time specified in this contract or any extension...."). "[W]here a contractor fails to comply with contract delivery schedules the contract may be terminated, pursuant to the default clause...." *Churchill Chem. Corp. v. United States,* 221 Ct.Cl. 284, 602 F.2d 358, 362 (Ct.Cl. 1979).

■ Consolidated seeks to excuse its failure to meet the contractual delivery dates by invoking the "excusable delay" exception to this principle. *See* 48 C.F.R. § 49.402–3(j) (1998); *Simmonds Precision Prods., Inc. v. United States,* 212 Ct.Cl. 305, 546 F.2d 886, 890–91 (Ct.Cl.1976); *De-Vito v. United States,* 188 Ct.Cl. 979, 413 F.2d 1147, 1151 (Ct.Cl.1969). It claims that its delays were attributable to the government's own deficiencies of providing defective specifications and failing to aid it in correcting the defects in its product.

We agree with the Court of Federal Claims that the waiver and accord and satisfaction in the Modification set forth above barred Consolidated from asserting these claims as justification for its failure to meet the contractual delivery schedules. In the Modification, Consolidated "[u]nconditionally waive[d] any charges against the Government arising under this order/contract or by reason of its cancellation, including, without limitation, all obligations of the Government ... to carry out any further undertakings under the canceled portion of the contract." The parties also "agree[d] that this modification constitutes full, final and complete settlement, satisfaction and accord, for any and all claims arising out of this order/contract, whether past or present." As the Court of Federal claims ruled, Consolidated "waived all claims against the Government concerning defective specifications" when it signed the Modification. Even after the Modification had extended the delivery schedule, Consolidated failed to meet the next two prescribed delivery dates. Consolidated cannot overturn the default termination on the claim that its failure to meet the contractual delivery schedule was excusable because of government conduct.

Consolidated also argues that the accord and satisfaction in the Modification barred the contracting officer from considering Consolidated's delivery and other defaults that occurred before the Modification. The default for which the contract was terminated, however, was the failure to make the two specified deliveries after the Modification was executed. The contracting officer considered Consolidated's earlier defaults in determining that "further extension of the delivery schedule is not in the best interest of the government" and that termination for default would "be in the best interest of the government."

■ In deciding to terminate the contract for default (rather than for the convenience of the government or, instead of terminating, to further extend the contractual dates for delivery), the contracting officer issued written findings that described in detail the delays in delivery, the defects in the product Consolidated had supplied, and the repeated extensions of time the government had granted. The contracting officer found that "[b]ased upon the original delivery date of 05 Nov 92, the contractor's subsequent delays and

problems experienced with items previously shipped under this contract, further extension of the delivery schedule is not in the best interest of the government." She also found that "Termination for Convenience is not in the best interest of the government."

The contracting officer also considered, "among other things," the seven "factors" that FAR § 49.402–3(f) states the contracting officer "shall consider . . . in determining whether to terminate a contract for default." The contracting officer stated that she had considered "the availability of the supplies being purchased under this contract from other sources" and "the urgency of the need for the supplies and the period of time required to obtain them from other sources, as compared with the time delivery could be obtained from this delinquent contractor. Considering the original contractual delivery date of 05 Nov 92, and the subsequent delays, I believe that the supplies can be obtained in less time from another source." The contracting officer also stated:

I have considered the degree of essentiality of the contractor in the Government Acquisition Program, and the fact that this contractor is a small disadvantaged business due special care and assistance in government contracts. I have further considered the effect this default termination might have upon this contractor's capability as a supplier under other contracts. I have determined that the contractor's failure is inexcusable and should be reflected as a default termination even in light of its favored business status and the effect such termination might have on the balance of the contractor's business.

■ Consolidated also contends that in approving the default termination, General Link did not have before him all the information necessary to do so. More specifically, it contends that "the Contracting Officer failed to provide the Commanding General with critical information concerning the value of inventory. [FAR § ] 49.402.3 requires the inclusion of such information to the approval authority."

That section, however, does not contain such a requirement. The contracting officer testified that "the entire contract file with the determinations and findings and everything" was forwarded to General Link "for review and approval." No more was required.

The history of Consolidated's repeated failures to meet the contractual delivery schedules, even as extended, the defects in the items it shipped and the other factors the contracting officer considered fully support her conclusion that termination of the contract for default would be in the best interest of the government. The contracting officer did not abuse her discretion or commit any legal or factual error in so ruling.

### III

■ Consolidated further contends that the Court of Federal Claims erred in refusing to permit it to call as a witness Mr. Dilworth, a government attorney who, it alleges, originally advised the contracting officer not to terminate for default, but who allegedly subsequently changed his recommendation. Consolidated apparently wanted to question Dilworth about his advice and the reasons for his allegedly changing it. The apparent ground upon which the Court of Federal Claims excluded the evidence was that its relevance was dubious.

■ When considering a default termination, the government may take that action "only after review . . . by counsel, to ensure the propriety of the proposed action." FAR § 49.402–3(a). Dilworth reviewed the proposed default termination and advised the contracting officer, who stated in her findings that she had "secured legal advice concerning the applicable laws and regulations." No more was necessary. The contracting officer was not required to follow counsel's recommendation, but only to consider it, which she did.

**1346**

A trial court's exclusion of evidence in such a situation is reviewed for abuse of discretion. *See Kolmes v. World Fibers Corp.,* 107 F.3d 1534, 1542 (Fed.Cir.1997). The specific advice that Dilworth initially may have given the contracting officer on whether to terminate the contract for default, and the reasons he may have changed that advice, are of such little relevance, if any, in evaluating the contracting officer's decision, that we cannot say the trial court abused its discretion in excluding the evidence.

## CONCLUSION

The judgment of the Court of Federal Claims is

*AFFIRMED.*