**George Richard LANTERMAN, Jr., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 06–302C.

United States Court of Federal Claims.

March 20, 2007.

---

George Richard Lanterman, Jr., Angelus Oaks, CA, pro se.

Jeffrey S. Pease, Trial Attorney, Commercial Litigation Branch, Civil Division, with whom were Mark A. Melnick, Assistant Director, David M. Cohen, Director, and Peter D. Keisler, Assistant Attorney General, Department of Justice, Washington, DC, for defendant.

## OPINION

BRUGGINK, Judge.

This is a pro se action brought by plaintiff, George Richard Lanterman, Jr. He claims that the United States Postal Service's termination for default of his contract for postal box delivery services was a breach of contract. Plaintiff filed suit in this court for damages for the alleged breach in the amount of $500,000. Pending now is defendant's motion for summary judgment.

Plaintiff has not responded to defendant's motion. The court contacted plaintiff by email to inform him that his response to the motion was overdue and that he should file his response as soon as possible. Because plaintiff did not respond, we must assume that the allegations in Defendant's Proposed Findings of Uncontroverted Fact, to the extent grounded in defendant's supporting materials, are correct. For the reasons set out below, we grant defendant's motion and dismiss the complaint.

## BACKGROUND

On May 12, 2003, plaintiff was awarded contract number 923A6 ("contract") for postal box delivery services for the term May 17, 2003 through June 30, 2006. The contract required plaintiff to perform daily service, with the exception of Sundays and holidays, from Mentone, California to Angelus Oaks, California.

Within three months after the commencement of the contract term, the Postal Service issued "Contract Route Irregularity Report" Postal Service Forms 5500 ("irregularity reports") regarding asserted deficiencies in plaintiff's performance. The Postal Service continued to issue irregularity reports to plaintiff through February 2005, the month prior to contract termination. Because plaintiff failed to respond to the numerous irregularity reports and problems persisted, the Postal Service convened a conference with plaintiff on January 26, 2005 to discuss his performance. Among the problems addressed were: plaintiff's failure to provide service on two days in October 2004, three days in November 2004, and one day in January 2005; plaintiff's various failures to screen employees as required by the contract; plaintiff's failure to wear proper uniform while performing duties under the contract; and plaintiff's permitting access to mail by unauthorized individuals. Plaintiff was present at the conference and was represented by counsel, Roger L. Heaton. The Postal Service issued three more irregularity reports after the conference.

The Postal Service also raised behavioral problems which occurred during the term of the contract. On September 28, 2004, plaintiff received a letter from Mr. Robert J. Saxton, Manager of Transportation Contracts of the Postal Service, informing plaintiff that he would be denied access to mail due to his disruptive behavior. The letter based the denial of access on plaintiff's "past angry outbursts with postal officials" at two post offices and "extremely inappropriate and unwanted behavior" toward Ms. Rose Chaney, a postal employee. Letter from Robert J. Saxton, Manager, Transp. Contracts, United States Postal Service, to George Lanterman, Jr. (Sept. 28, 2004). The letter stated that plaintiff's actions were "disturbing" and that they caused concern about "the safety and welfare of all involved." Id. On October 20, 2004, plaintiff, in a phone call to the Contract Specialist, Ms. Barbara Avila, "became so rude and loud that [she] was forced to end the conversation with him." Decl. of Barbara Avila at ¶ 7. After the first phone conversation ended, plaintiff called back and "began to yell at [her] in the same rude manner," and Ms. Avila once again ended the conversation. Id.

at ¶ 8. Plaintiff continued to "verbally harass [Ms. Avila,] making a myriad of accusations in a loud, aggressive manner." *Id.* at ¶ 10.

On March 3, 2005, Ms. Janet Arizaga, a postmaster, discussed a potential safety issue with plaintiff's wife about a pile of parcels she had stacked too high. Shortly afterwards, plaintiff called Ms. Arizaga and accused her of harassing his wife in a "rude, angry tone" and twice said "I'm going to take you down." Arizaga Aff. ¶¶ 10, 12. The postmaster was "so shaken" by this event, that she requested to leave work early that day and to be temporarily placed in a different facility to "ensure [her] safety." *Id.* at ¶¶ 15–17.

On March 4, 2005, based on concerns over the foregoing conduct, the contracting officer temporarily suspended plaintiff's contract. The letter informing plaintiff of the suspension noted that even after the denial of access to mail on September 28 because of his "abusive and disruptive behavior toward postal personnel," plaintiff continued such behavior and "directly threatened the Postmaster" on March 3, 2005. Letter from Karen L. Devine, Acting Manager, Transp. Contracts, United States Postal Services, to George R. Lanterman, Jr. (Mar. 4, 2005). The contracting officer issued a final decision on April 20, 2005, terminating the contract for default effective March 4, 2005. The bases for the termination were Section H.5.g(c) of the contract, which requires maintenance of good character, and Section H.5.b, which provides that violation of Postal laws and regulations constitutes a default, subjecting the contract to termination.

On April 17, 2006, plaintiff filed suit here, claiming that defendant breached the contract by terminating his right to perform service under the contract. Plaintiff alleges that he fulfilled all the tasks required under the contract except when "he was prevented from performing by Defendant." Compl. at ¶ 6. In view of plaintiff's failure to respond to the motion for summary judgment, oral argument is deemed unnecessary.

## DISCUSSION

A motion for summary judgment is granted when, "examined in a light most favorable to the non-movant, the record indicates 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Flexfab, L.L.C. v. United States,* 424 F.3d 1254, 1259 (Fed.Cir.2005) (quoting Rules of the United States Court of Federal Claims 56(c)). The moving party bears the burden of demonstrating "an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1563 (Fed.Cir.1987) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, this burden on the moving party is not to produce evidence showing such an absence, but rather, to point out "that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions,* 833 F.2d at 1563. "Where a movant has supported its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant may not rest upon general denials in its pleadings or otherwise, but must proffer countering evidence sufficient to create a genuine factual dispute." *Id.* at 1562. The underlying question here is whether defendant breached the contract by terminating plaintiff's contract for default.

"[A] contracting officer has broad discretion to determine whether to terminate a contract for default." *Consol. Indus., Inc. v. United States,* 195 F.3d 1341, 1343 (Fed. Cir.1999). Such a decision will be overturned if it is "arbitrary, capricious, or constitutes an abuse of discretion." *Id.* at 1343–44. Case law has established the relevant factors: "(1) evidence of subjective bad faith on the part of the government official, (2) whether there is a reasonable, contract-related basis for the official's decision, (3) the amount of discretion given to the official, and (4) whether the official violated an applicable statute or regulation." *McDonnell Douglas Corp. v. United States,* 182 F.3d 1319, 1326 (Fed.Cir. 1999) (quoting *United States Fid. & Guar. Co. v. United States,* 230 Ct.Cl. 355, 676 F.2d 622, 630 (1982)).

The government bears the burden of showing that the termination was justified.

*Lisbon Contractors, Inc. v. United States,* 828 F.2d 759, 765 (Fed.Cir.1987). One of the relevant factors in determining whether a contractor is in default is the contractor's failure to meet contract specifications. *McDonnell Douglas,* 182 F.3d at 1328; *see Granite Constr. Co. v. United States,* 962 F.2d 998, 1007–07 (Fed.Cir.1992), *cert. denied,* 506 U.S. 1048, 113 S.Ct. 965, 122 L.Ed.2d 121 (1993) (recognizing that "the government generally has the right to insist on performance in strict compliance with the contract specifications."). Once the government proves default, "plaintiff has the burden of proving that the default was excusable under the terms of the contract." *Airport Indus. Park, Inc. v. United States,* 59 Fed. Cl. 332, 338 (2004); *see Dairyland Power Co-op. v. United States,* 16 F.3d 1197, 1202 (Fed.Cir.1994). In this connection, plaintiff alleges that he "has performed all conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the contract except for those he was prevented from performing by Defendant." Compl. at ¶ 6. By terminating his right to perform the contract, plaintiff claims that defendant breached the contract and is liable for damages.

█ Defendant argues that the termination for default was well within the contracting officer's discretion and was not arbitrary or capricious. The termination, according to defendant, was based on plaintiff's violation of contract requirements. Specifically, defendant claims plaintiff violated the contract requirements of good character, compliance with postal regulations, and performance of the terms of the contract. Defendant first points to Section H.5.g(c) of the contract, which provides that a contract may be terminated for default where the contractor is "not ... of good character." The letter notifying plaintiff of the termination for default cited that provision. Defendant relies on the sworn affidavits and documents referred to above, which describe plaintiff's behavior towards other postal employees, as proof that plaintiff failed the requirement of good character.

The term "good character" is not defined in the contract, and this court has not explored the term in this particular context. The Postal Service Board of Contract Appeals ("PSBCA"), however, examined the question in *Banks Trucking,* PSBCA No. 3528, 96–1 BCA ¶ 28,132, 1996 WL 1343. In that case, the contractor was terminated for default on two provisions in the contract. One required the contractor to be of good character and the other provision authorized termination for default for violating Postal laws and regulations. The PSBCA found the contracting officer's decision to terminate for default unjustified on both grounds despite reports on the contractor's use of a raised voice and occasional swearing. *Id.* The PSBCA reasoned that the contractor did not threaten anyone, that the occasional swearing was not directed at anyone in particular, and that he was not "any more than an equal participant in the argument with the postmaster." *Id.*

Unlike *Banks Trucking,* defendant asserts, plaintiff's conduct here was directed at and threatening to other postal employees. Plaintiff's "angry outbursts with postal officials" was threatening enough that the contracting officer felt "quite concerned about the safety and welfare of all involved." Letter from Robert J. Saxton, Manater, Transp. Contracts, United States Postal Service, to George Lanterman, Jr. (Sept. 28, 2004). Plaintiff's phone calls with Ms. Avila were verbally abusive and accusatory. Plaintiff's statement to Ms. Arizaga, "I'm going to take you down," left her "so shaken" that she had to leave work early and request a temporary reassignment. Arizaga Aff. ¶¶ 10–17. We agree with defendant that these circumstances distinguish the present facts from those in *Banks Trucking.*

Defendant also asserts that the termination for default was based on another provision of the contract, Section H. 5.b., which provides that violation of Postal laws and regulations may be treated as grounds for default. Defendant cites *Peter A. Sobiecki d/b/a Roadmax,* PSBCA No. 4901, 04–1 BCA ¶ 32,600, 2004 WL 830975. There, the contractor engaged in an altercation with another postal employee and

threatened to physically harm the employee. Although the contractor in *Sobiecki* did not have a history of disruptive behavior and the incident did not result in a disruption of services because the employee was able to resume work, the PSBCA found the contractor's behavior to be a material breach of the contract's requirement to comply with postal regulations. The PSBCA cited 39 C.F.R. § 232.1 (2001), governing conduct on postal property:

(e) Disturbances. Disorderly conduct, or conduct which creates loud and unusual noise, or which obstructs the usual use of entrances, foyers, corridors, offices, elevators, stairways and parking lots, or which otherwise tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on property, is prohibited.

39 C.F.R. § 232.1(e). The PSBCA held that the contracting officer did not abuse his discretion in deciding to terminate for default. *See Sobiecki*, PSBCA No. 4901, 04-1 BCA ¶ 32,600.

Defendant contends that plaintiff's behavior was more egregious than that of the contractor in *Sobiecki*. Specifically, defendant argues that while plaintiff's telephone threats do not technically violate 39 C.F.R. § 232.1, as they did not occur on postal property, his behavior described in the letter dated September 28, 2004 falls within the holding of *Sobiecki*. We agree. In that letter, the manager of transportation contracts described plaintiff's behavior with respect to a postal employee, Ms. Chaney. Plaintiff "approached Ms. Chaney at the Mentone Post office and made romantic overtures to her," and even after he was "warned that [his] behavior was extremely inappropriate and unwanted, [he] would not leave Ms. Chaney alone." Letter from Robert J. Saxton, Manager, Transp. Contracts, United States Postal Service, to George Lanterman, Jr. (Sept. 28, 2004). Because of this conduct, a temporary restraining order was issued to keep plaintiff from approaching Ms. Chaney again. Additionally, the letter discussed other "alleged past angry outbursts with postal

officials at the Forest Falls and Angelus Oaks post offices." *Id.* Plaintiff was told that his actions were "disturbing" and that the Manager was "quite concerned about the safety and welfare of all involved." *Id.* This is precisely the kind of disorderly behavior described in 39 C.F.R. § 232.1(e). Such conduct would be grounds for a termination for default under *Sobiecki*. We likewise find here that the contracting officer's decision was justified.

Defendant also claims that the termination for default was justified by plaintiff's failure to perform the terms of the contract. We have already mentioned that the government has a right to insist on strict compliance with contract specifications and that failure to do so may place the contractor in default. *See McDonnell Douglas*, 182 F.3d at 1328. Section H.5.a of the contract specifically provides that the contract may be terminated for "[t]he supplier's failure to perform service according to the terms of the contract." Defendant points to approximately fifty irregularity reports to demonstrate that the decision to terminate was justifiably based on plaintiff's unsatisfactory performance of the contract. Among the deficiencies were failure to provide service on six occasions, failure to wear the proper uniform, failure to properly screen employees, and failure to maintain motor vehicle insurance. The contracting officer's letter informing plaintiff of the final decision to terminate his contract does not explicitly state that a violation of Section H.5.a was a basis for the decision. Nevertheless, at the conference held on January 26, 2005, plaintiff was warned that continued unsatisfactory performance of the contract "may lead to … termination of [his] contract." Memorandum for the File on Unsatisfactory Service Conference at 5. Despite the warning, plaintiff continued to have irregularities, including his failure to screen an employee and late arrivals.

We agree with defendant that plaintiff's failure to meet contract requirements, along with plaintiff's violation of a Postal regulation and failure to maintain good character, justify the contracting officer's decision to terminate the contract. The government has established its grounds for default, relying on

affidavits and documents which would be admissible under the Rules of Evidence. The burden then shifts to plaintiff to show the default was excused. Plaintiff has not done so.

Although we could rest on the fact that plaintiff has not responded to demonstrate that the default was excused under the terms of the contract, we have nevertheless reviewed the complaint, as plaintiff brought this suit pro se. Even after reviewing the complaint, however, and assuming plaintiff's allegations therein to be correct, there are no specific allegations that the default was excused, that the termination for default was a mere pretext, or that the termination was otherwise an abuse of the contracting officer's discretion. Although plaintiff alleges that he was prevented from performing, defendant has carried its burden of showing that it was plaintiff's own conduct in violation of the contract that caused the Postal Service to deny him access to mail and to terminate the contract. The government has shown that its termination was justified and plaintiff has not shown that the default was excused. Accordingly, we conclude that there was no abuse of discretion by the contracting officer. Defendant's motion for summary judgment is granted.

## CONCLUSION

For the reasons stated herein, defendant's motion is granted. The Clerk is directed to dismiss the complaint. No costs.