**Philip EMIABATA, d/b/a Nova Express, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Nos. 07–653C, 09–339C.**

United States Court of Federal Claims.

Jan. 18, 2012.

---

Philip Emiabata, pro se, Austin, Texas, for plaintiff, Nova Express.

Robert Bigler, Civil Division, United States Department of Justice, with whom was Assistant Attorney General Tony West, for defendant.

## OPINION

ALLEGRA, Judge:

In this contract case, Philip Emiabata, d/b/a NOVA EXPRESS (Nova Express) challenges the decision of the United States Postal Service (USPS) to terminate for de-fault his mail delivery contract. Defendant moves for summary judgment under RCFC 56, claiming that the default was proper based on Nova Express' failure to obtain the contractually-required liability insurance. Finding that there are no genuine issues of material fact, the court concludes that defendant is entitled to judgment as a matter of law.

## I. BACKGROUND

While this case has a long history, only a few facts are needed to provide the necessary context for this motion.

Nova Express is a sole proprietorship owned by Philip Emiabata and registered with the State of Texas. *See Nova Exp. v. United States,* 80 Fed.Cl. 236 (2008).

On April 13, 2007, the USPS awarded Nova Express Highway Contract 320SE, to provide mail transportation services between Jacksonville, Florida and New York City, New York. As for performance, Clause B.7 of the contract required Nova Express to "establish and maintain continuously in effect a policy or policies of liability insurance for all motor vehicles to be used under the contract," adding that for "[v]ehicles with a gross vehicle weight rating of 10,000 pounds or more" the minimum insurance requirement was "$750,000 Combined Single Limit." Regarding this insurance requirement, the contract further stated that Nova Express was to provide to the contracting officer, "[p]rior to commencement of service under the contract, and thereafter as the contracting officer may require, proof that the supplier has all required insurance, plus a copy of the applicable policy or policies." As to this and the other performance requirements, the contract provided that the USPS could "terminate this contract, or any part hereof, for default by the supplier, or if the supplier fails to provide the Postal Service, upon request, with adequate assurances of future performance."

On April 13, 2007, the contracting officer (CO) sent Nova Express a copy of the contract along with a letter outlining the actions the latter needed to complete prior to performing under the contract. This letter indicated that "[p]rior to starting service," Nova

Express was to supply the CO with "[a] certification of insurance, providing proof that you will have coverage in effect as of the start of service under the contract is required." Regarding this insurance requirement, the CO further instructed—"[y]ou must submit a copy of the actual insurance policy, including any riders or endorsements, when you receive it and it should be endorsed as stated in Section C of the solicitation. Please be sure to include a copy of the Premium Declaration page." In addition, consistent with the requirements of the contract, the letter directed Nova Express to present its vehicles for inspection by designated USPS officials and to complete a Vehicle Information Sheet. Nova Express took no action in response to this letter.

On April 23, 2007, the CO sent Nova Express another letter instructing the latter to contact a USPS official in Jacksonville to arrange to have its vehicles inspected. The letter indicated that Nova Express was to have its vehicles inspected immediately and to return the completed vehicle inspection forms **"no later than 2 p.m. CST on April 27, 2007."** (Emphasis in original). The CO warned Nova Express that its failure to fax the approved inspection forms to the USPS would "put this contract in jeopardy of termination for default." This letter made no reference to the aforementioned insurance requirement. Nova Express took no action in response to this letter.

On April 30, 2007, the CO sent Nova Express a "Show Cause Notice" instructing it to cease operations and giving the company until May 11, 2007 to provide "a written explanation as to why [the contract] should not be terminated for default." The notice further stated that "[f]ailure to present your vehicles for inspection is in direct violation of your contract and is grounds for termination for default." The letter finally emphasized

that *"[y]our failure to present any excuses in writing within the specified timeframe may be considered as an admission that no excuse for your repudiation exists."* (Emphasis in original). This letter made no reference to the aforementioned insurance requirement.

On April 30, 2007, Nova Express returned the Vehicle Information Sheet to the USPS. In the accompanying letter, Mr. Emiabata claimed that he had not received the April 13, 2007, letter, until April 19, 2007. The letter admitted that Nova Express' vehicles still had not been inspected, but promised that the vehicles would be presented for inspection no later than May 4, 2007. Despite this representation, there is no evidence that Nova Express ever presented its vehicles for inspection (by the date indicated, or at any time). On May 24, 2007, the CO sent Nova Express a letter demanding that, by June 6, 2007, it provide adequate assurances that it would be able to perform the contract in the future. The letter specifically demanded that Nova Express provide information, *inter alia,* about its vehicles, personnel, and proof of liability insurance. As to the latter requirement, the letter indicated that Nova Express was required to "submit a copy of the policy including its coverage and exclusions, and Declarations naming Philip Emiabata/Nova Express as insured." [1]

On June 4, 2007, Nova Express responded, in writing, to the USPS demand for adequate assurances. It provided information about its vehicles and drivers. This same letter indicated that "[e]nclosed is the insurance coverage," indicating further that as to the policies in question, Nova Express "will convert the liability [or] property damage from 1,000,000 to 750,000" once "we know the date the Contract will start." [2] The documents provided, however, contradicted that claim.

---

1. An earlier passage in the letter indicated that "[a]ll information sought by this letter *must* be provided in the manner specified. When submission of specific documents is called for, I will not accept personal statements in place of the documents." (Emphasis in original).

2. On brief, defendant describes this hand-written letter as indicating that Nova Express will convert its policies from "1,000 to 750,000." In

making this assertion, however, defendant appears to have overlooked three zeroes that begin the line following the line that refers to the number "1,000." Viewing this letter in a light favorable to plaintiff (the non-movant), the court believes that the reference in the letter is to "1,000,000," not "1,000." As will be seen, though, this observation does not change the result here.

Two of the certificates provided, purportedly reflecting insurance through the Lincoln General Insurance Company, were entitled "CERTIFICATE OF NON–TRUCKING INSURANCE" and specifically excluded coverage if the described vehicles were "[u]sed to carry property in any business or in route for such purpose." (Emphasis in original). Four other certificates, purportedly reflecting insurance through Intersafe, Inc., made clear that the insurance provided did "NOT INCLUDE LIABILITY INSURANCE." (Emphasis in original).[3]

Because, *inter alia,* Nova Express failed to provide adequate assurances with regard to the contractually required liability insurance, the CO, on June 27, 2007, terminated the contract for default. Regarding the insurance requirement, the termination notice stated—

> You failed to obtain and to submit evidence establishing liability insurance coverage meeting the contract requirements. The contract mandates that you must submit that proof, including a copy of the policy, prior to commencement of service, and I specifically demanded it in my May 24 letter. The "insurance" documentation submitted by you does not reflect liability coverage that protects the interests of the Postal Service. In fact, the documents do not show any relevant coverage at all, and even the personal coverage they indicate was not in effect as of May 7. You have totally failed to provide information regarding coverage and exclusion as required. I have no reason to believe that you have had the necessary coverage at any relevant time.

This letter listed seven other reasons supporting the termination for default.

On September 6, 2007, Nova Express filed a complaint in this court against defendant seeking damages for breach of contract. Following discovery, on June 30, 2011, defendant filed a motion for summary judgment. Briefing on this motion has been completed. Argument on the motion is deemed unnecessary.

**3.** In his deposition, Mr. Emiabata claimed that these certificates included this proviso because they only covered trailers. This assertion is

## II. DISCUSSION

The central issue raised by defendant's summary judgment motion is whether the termination for default here was lawful. In response to the motion, plaintiff argues that material questions of fact exist that preclude the grant of summary judgment.

### A. Legal Background

We begin with common ground. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Id.* at 248, 106 S.Ct. 2505. However, summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Becho, Inc. v. United States,* 47 Fed.Cl. 595, 599 (2000).

When making a summary judgment determination, the court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *see also Agosto v. Immigration & Naturalization Serv.,* 436 U.S. 748, 756, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978) ("a [trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"); *Am. Ins. Co. v. United States,* 62 Fed.Cl. 151, 154 (2004). The court must determine whether the evidence presents a disagreement sufficient to require fact finding, or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 250–52, 106 S.Ct. 2505; *see also Ricci v. DeStefano,* 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (" 'Where

plainly contradicted by one of the certificates which indicates that it is for a "Volvo."

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" (quoting *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348)). Where there is a genuine dispute, all facts must be construed, and all inferences drawn from the evidence must be viewed, in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)); *see also Stovall v. United States*, 94 Fed.Cl. 336, 344 (2010); *L.P. Consulting Grp., Inc. v. United States*, 66 Fed.Cl. 238, 240 (2005).

■■■ The Supreme Court has instructed that in determining whether summary judgment is appropriate, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505. Turning to this matter, it is well-settled that a "default-termination is a drastic sanction . . ., which should be imposed (or sustained) only for good grounds and on solid evidence." *J.D. Hedin Constr. Co. v. United States*, 408 F.2d 424, 431 (Ct.Cl.1969) (internal citation omitted); *see also Becho, Inc.*, 47 Fed.Cl. at 600. The initial burden in a termination for default case is on the government to establish that the contractor was in default. *See Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 765 (Fed.Cir.1987); *Florida Engineered Constr. Prods. Corp. v. United States*, 41 Fed.Cl. 534, 538 (1998). If default is established, then the burden shifts to the contractor to show that its failure to perform was excusable. *Becho, Inc.*, 47 Fed. Cl. at 600. A contracting officer's decision to terminate a contract for default will be set aside if it is "arbitrary and capricious," or "represents an abuse of his discretion." *Darwin Construction Co. v. United States*, 811 F.2d 593, 598 (Fed.Cir.1987); *see also Consolidated Indus., Inc. v. United States*, 195 F.3d 1341, 1343–44 (Fed.Cir.1999).

**B. Was the termination for default here appropriate, as a matter of law?**

The default provision in question provided that—"The Postal Service may terminate this contract, or any part hereof, for default by the supplier, or if the supplier fails to provide the Postal Service, upon request, with adequate assurances of future performance." In terms of the authority it conferred on the CO here, this clause is at least as broad as—and arguably broader than—the standard default clause found in FAR 52.249–10. That clause gives the CO the right to terminate a contract for default if the contractor "refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion within the time specified in [the] contract including any extension, or fails to complete the work within this time." 48 C.F.R. § 52.249–10.

■■■ Given the similarity between these two clauses, logic suggests that the principles developed under the FAR clause are applicable here—and various cases have operated on this assumption. *See, e.g., Pinckney v. United States*, 88 Fed.Cl. 490, 505–06 (2009). As such, defendant must demonstrate that "the contracting officer's termination decision [was] based on tangible, direct evidence reflecting the impairment of timely completion." *McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1016 (Fed.Cir.2003); *see also Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 766 (Fed.Cir.1987). This burden is not satisfied "by merely showing that the contractor was behind schedule." *Lisbon*, 828 F.2d at 765. Rather, defendant must show that the contracting officer had a "reasonable belief . . . that there was no reasonable likelihood that the contractor could perform the entire contract effort within the time remaining for contract performance." *Id.; see also McDonnell Douglas*, 323 F.3d at 1016; *Danzig v. AEC Corp.*, 224 F.3d 1333, 1336–37 (Fed.Cir.2000). Although the contemporaneous documents are relevant to this determination, this court may also consider a range of other factors, including the percentage of work completed and the amount of time remaining under the contract, *see Edge Constr. Co., Inc. v. United States*, 95 Fed.Cl. 407, 422 (2010) as well as the contractor's failure to meet progress milestones, *see Armour of Am. v. United States*, 96 Fed.Cl. 726, 745–46 (2011).

█ In the case *sub judice*, defendant has established that the USPS properly terminated Nova Express for default because the latter failed to meet an important precondition for it to begin performance, namely, obtaining the contractually-required liability insurance. Defendant has shown that the contract required that Nova Express establish and maintain specified levels of insurance for its mail transportation contract. Defendant has also demonstrated that the contract authorized the CO to require Nova Express to provide proof that it had obtained the requisite insurance prior to the commencement of performance. Thus, in this regard, the contract plainly stated that Nova Express was to provide to the contracting officer "[p]rior to commencement of service under the contract, and thereafter as the contracting officer may require, proof that the supplier has all required insurance, plus a copy of the applicable policy or policies." Via a variety of documents, defendant has also established that the CO repeatedly demanded that Nova Express provide proof of insurance and that Nova Express failed to provide that proof. Indeed, the chain of correspondence firmly establishes that when Nova Express, faced with the prospect of default, finally responded to the CO's request, it supplied documents that, on their face, contradicted its claim that it had obtained the requisite insurance.

Notwithstanding, plaintiff claims that there are general issues of material fact that preclude this court from granting summary judgment in defendant's favor. But, this claim is off the mark for a variety of reasons.

First, this claim proceeds from plaintiff's notion that the contract did not require it to provide proof of insurance until after it was performing the contract. As discussed above, however, the plain language of the contract thoroughly rebuts this interpretation and provides concrete standards by which to measure the timeliness of plaintiff's performance—or the lack thereof. *See Hercules, Inc. v. United States*, 292 F.3d 1378, 1380–81 (Fed.Cir.2002); *Arko Exec. Servs. v. United States*, 78 Fed.Cl. 420, 424 (2007). Second, Nova Express contends that, contrary to defendant's assertion, it complied with the CO's request for proof of insurance. But, this claim is not supported by an affidavit or documentary evidence, as is required by RCFC 56. *See* RCFC 56(c); *see also Sharp v. United States*, 580 F.3d 1234, 1237 (Fed.Cir.2009); *Cohen v. United States*, 94 Fed.Cl. 165, 174 (2010). Indeed, it is thoroughly contradicted by the documentary evidence in this case. Third, Nova Express deems it significant that defendant originally predicated its default on eight failures, but now is proceeding based solely on Nova Express's failure to provide proof of insurance. But, the record makes clear that the lack of proof of insurance was the driving force behind the CO's termination decision. At all events, nothing precludes defendant from proceeding now on less than all the bases that were invoked by the CO in support of the default termination—at least for purposes of this motion. Indeed, the Federal Circuit has held that an agency may justify a default termination on grounds that were unknown at the time of the determination. *See Kelso v. Kirk Bros. Mech. Contractors, Inc.*, 16 F.3d 1173, 1175 (Fed.Cir.1994); *Joseph Morton Co., Inc. v. United States*, 757 F.2d 1273, 1277 (Fed.Cir.1985); *see also Pots Unlimited, Ltd. v. United States*, 600 F.2d 790, 793 (Ct.Cl.1979) ("It is settled law that a party can justify a termination of there existed at the time an adequate cause, even if then unknown."). If this is so, logic suggests that defendant may justify the CO's decision on less than all the grounds that were originally asserted in support of a default termination.

Plaintiff's arguments are thus all unavailing. Regarding the issue of default, "no rational trier of fact could find for the non-moving party" based upon the record evidence before the court. *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 968 (Fed.Cir.2009); *see also Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. Therefore, the court determines that defendant has shown that it is entitled to judgment as a matter of law in this case.

## III. CONCLUSION

This court need go no further. Based on the foregoing, the court **GRANTS** defen-

dant's motion for summary judgment. The Clerk is ordered to enter judgment in favor of defendant and to dismiss plaintiff's complaint.

**IT IS SO ORDERED.**