NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALLEN ENGINEERING CONTRACTOR INC.,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2014-5094, 2014-5095, 2014-5096

---

Appeals from the United States Court of Federal Claims in Nos. 1:13-cv-00684-JFM, 1:13-cv-00695-JFM, 1:13-cv-00720-JFM, Senior Judge James F. Merow.

---

Decided: May 7, 2015

---

WILLIAM L. BRUCKNER, Bruckner & Walker, San Diego, CA, for plaintiff-appellant. Also represented by CHELSEY N. DEL TESTA.

ERIC LAUFGRABEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., DONALD E. KINNER; STEPHEN TOBIN, Office of Litigation, United States Navy, Washington, DC.

---

Before MOORE, CLEVENGER, and WALLACH, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

Allen Engineering Contractor Inc. appeals the decisions of the Court of Federal Claims, granting motions to dismiss, in their entirety, complaints for improper termination of a contract. *Allen Eng'g Contractor Inc. v. United States*, 115 Fed. Cl. 457 (2014); *Allen Eng'g Contractor Inc. v. United States*, No. 13-720 C, 2014 WL 1862269 (Fed. Cl. May 8, 2014); *Allen Eng'g Contractor Inc. v. United States*, No. 13-695 C, 2014 WL 1860074 (Fed. Cl. May 8, 2014). This court has jurisdiction under 28 U.S.C. § 1295(a)(3) (2012). Because Allen Engineering Contractor Inc. breached its agreement with the Navy, and has failed to establish any grounds for excusing this breach or shifting liability to the Navy, *we affirm.*

I

This case concerns the same set of operative facts, pertaining to three distinct construction contracts between Allen Engineering Contractor Inc. ("AECI") and the United States Navy. Between June and July 2012, AECI entered into three construction contracts with the Navy individually valued at $2,855,419, $11,553,083, and $ 12,301,127.05.[1] In May 2013, the Navy terminated all

---

[1] AECI filed three complaints alleging improper termination of contracts. The court issued one detailed opinion and order, pertaining to one contract. *Allen Eng'g Contractor Inc. v. United States*, 115 Fed. Cl. 457 (2014). Then, finding no material differences between the first case and the other two, the court issued two brief orders, based on the same reasons set forth in the prior opinion. No. 13-720 C, 2014 WL 1862269 (Fed. Cl. May 8, 2014);

three of the contracts because AECI had failed to maintain valid performance and payment bonds covering each of them. This was a material breach of AECI's agreement with the Navy, and the Navy appropriately terminated the contracts under 48 C.F.R. § 52.249-10(a).

A contractor on a construction project worth more than $150,000 is required to post and maintain performance and payment bonds covering 100 percent of the contract price. 40 U.S.C. § 3131; 48 C.F.R. § 52.228-15(b).[2] The regulations require that the "bonds shall be in the form of firm commitment, supported by corporate sureties whose names appear on the list contained in Treasury Department Circular 570 . . ." 48 C.F.R. § 52.228-15(d).

"Under a performance bond, a surety guarantees that the project will be completed if a contractor defaults. It is designed to ensure 'that [the government] is not left with a partially completed project because of an insolvent contractor.'" *Dependable Ins. Co. v. United States*, 846 F.2d 65, 66 (Fed. Cir. 1988) (citing *Aetna Casualty & Sur. Co. v. United States*, 845 F.2d 971, 973 (Fed. Cir. 1988); *Morrison Assurance Co. v. United States*, 3 Cl. Ct. 626, 632 (1983)). And payment bonds are designed to protect people who have contractual relationships with the prime contractor or a subcontractor. *J.W. Bateson Co., Inc. v. United States ex rel. Bd. Of Trustees of Nat. Automatic Sprinkler Industry Pension Fund*, 434 U.S. 586, 587 (1978). "Because 'a lien cannot attach to Government

No. 13-695 C, 2014 WL 1860074 (Fed. Cl. May 8, 2014). AECI filed three appeals, and this court consolidated them under the case number 2014-5094.

[2]    In 2010, the government increased the threshold for payment and performance bonds from $100,000 to $150,000. *Federal Acquisition Regulation; Inflation Adjustment of Acquisition-Related Thresholds*, 75 Fed. Reg. 53129, 53135 (Aug. 30, 2010).

property,' persons supplying labor or materials on a federal construction project [are] protected by a payment bond." *Id.* at 589 (quoting F.*D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 121–22 (1974)).

Shortly after the Navy awarded the contracts in question, AECI provided performance and payment bonds from Liberty Mutual Insurance Company ("Liberty"). The Navy accepted each of the Liberty bonds, and work commenced on all three projects.

Between February and March 2013, AECI sought to replace those Liberty bonds with bonds from the Pacific Indemnity Company ("PIC"). After investigating the validity and authenticity of the PIC bonds, and per AECI's request, the Navy replaced the Liberty bonds with PIC bonds. Also per AECI's request, the Navy returned the Liberty bonds. Then, in May 2013, PIC called AECI and the Navy to inform them that the bonds supposedly issued by PIC were fraudulent. The supposed-PIC bonds were not issued by PIC and were therefore invalid.

In light of that fact, the Navy suspended work on each of the three contracts in question. The Navy asked AECI to provide valid replacement bonds, but AECI was unable to secure them. Because AECI failed to secure valid bonds, on July 5, 2013, the Navy terminated one contract for default and on July 10, 2013, terminated the other two for default.

In the present action, AECI is seeking to have the default terminations converted to convenience terminations. It would be appropriate to convert these to terminations for the convenience of the government if "it is determined that the Contractor was not in default, or that the delay was excusable." 48 C.F.R. § 52.249-10(c).

AECI relies on multiple theories to allege that the Navy improperly terminated these contracts, and that it

therefore did not default on the contracts. The Court of Federal Claims ("CFC") held AECI had failed to state a claim on which relief could be granted, and therefore granted the government's motion to dismiss. This court reviews de novo a CFC decision to dismiss for failure to state a claim. *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1328 (Fed. Cir. 2012).

## II

AECI's arguments on appeal are the same as those it raised to the CFC. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). And a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* We agree that the CFC correctly rejected each of AECI's arguments, and address each argument in turn.

## A

The Navy terminated the AECI contracts for default under 48 C.F.R. § 52.249-10(a). "If [a] Contractor refuses or fails to prosecute [] work . . . , with the diligence that will insure its completion within the time specified in [a] contract . . . , the Government may . . . terminate the right to proceed with the work . . . ." 48 C.F.R. § 52.249-10(a). AECI argues that the termination was wrong, because it merely failed to provide a third set of bonds and there is no evidence that it failed to perform work.

We disagree. For one, AECI breached the contracts by failing to furnish valid bonds. This material breach was, itself, grounds for termination. Moreover, the CFC has recognized other, non-delay related grounds for default terminations. Finally, AECI was prohibited from working on the contract until valid bonds were in place. Therefore,

it would not have been able to complete the work in the allotted time.

As a general matter, government contracting officers have "broad discretion to determine whether to terminate a contract for default." *Lanterman v. United States*, 75 Fed. Cl. 731, 733–34 (2007). The CFC overturns those decisions only if they are arbitrary, capricious, or an abuse of discretion. However, the government bears the burden of establishing that a termination was justified. *Id.*

In this case, AECI's failure to maintain valid payment and performance bonds was a material breach of the contract. "A breach is material when it relates to a matter of vital importance, or goes to the essence of the contract." *Thomas v. Dep't of Hous. & Urban Dev.*, 124 F.3d 1439, 1442 (Fed. Cir. 1997). And, even for the government, it is true that "[a] party to a contract, faced with a breach by the opposing party, can choose either to terminate the contract or to continue the contract. . ." *McDonnell Douglas Corp. v. United States*, 182 F.3d 1319, 1327 (Fed. Cir. 1999). Even AECI seems to agree that the bonds are material to these contracts. It suggests that the Navy materially breached the agreement by failing to investigate the validity of the bonds. If a failure to investigate the bonds is of vital importance to the agreement, as AECI says, then the bonds themselves must also be vital.

The CFC has previously held that "failure to furnish adequate bonding . . . is a material breach that justifies termination for default." *Airport Indus. Park, Inc. v. United States*, 59 Fed. Cl. 332, 334 (2004). In *Airport Industrial*, the contractor obtained bonds from a surety that became insolvent before work on the contract was complete. *Id.* at 333. When the contractor failed to obtain a replacement payment bond, the government terminated the contract for default under 48 C.F.R. § 52.249-10(a). *Id.* at 333–34. The contractor argued, in part, that its failure

to maintain adequate bonds was caused by government delay. *Id.* at 337. The parties had agreed to contract modifications and extended the time of completion. *Id.* And the contractor argued that, absent that delay, it would have maintained bonds throughout the project. *Id.*

In that case, the CFC held that the termination for default was justified. *Id.* at 338. The CFC concluded that, to prevail, and excuse its default, the contractor would have to prove that the government materially breached the contract. *Id.* And the contractor failed to point to specific contract terms or implied obligations that the government breached. *Id.*

In its opinion below, the CFC emphasized *Airport Industrial* to establish that failure to maintain bonds constitutes a material breach. On appeal, AECI attempts to distinguish the present case. It argues that, in *Airport Industrial*, the government was not at fault in causing the contractor's inability to obtain bonds, and in this case, AECI claims that the Navy directly caused AECI's lack of adequate bonding.

As discussed in the following section, we find no grounds to excuse AECI's default based on government actions. And if, as in *Airport Industrial*, AECI must prove that the government materially breached the contract to establish excusable default, it has failed to do that. Finally, the Navy's actions to investigate the PIC bonds and honor AECI's request to replace the Liberty bonds did not cause this default. AECI provided fraudulent bonds to the Navy, and AECI failed to furnish valid bonds after that. Therefore, AECI's attempt to distinguish *Airport Industrial* based on the Navy's actions in this case is unconvincing.

Beyond the bonding requirement, the CFC has held that other, non-delay related breaches can be grounds to terminate for default under § 52.249-10(a). *See Professional Servs. Supplier, Inc. v. United States*, 45 Fed. Cl.

808 (2000) (problems with materials and workmanship may give rise to termination for default); *Aptus Co. v. United States*, 61 Fed. Cl. 638, 663 (2004) *aff'd sub nom. Lin v. United States*, 159 F. App'x 186 (Fed. Cir. 2005) (non-compliant submission of details about a product design, failure to get advance approval for purchases, and failure to comply with staffing requirements may all constitute material breach of contract and termination for default was appropriate). Case law reveals one relevant limiting factor—termination for default must be related to contract performance. *McDonnell Douglas Corp. v. United States*, 182 F.3d 1319, 1326 (Fed. Cir. 1999) (when pressure from a congressional oversight committee is the sole grounds for termination, that is unrelated to contract performance and termination for default is improper). The payment and performance bonds in this case are embodied in the contract, and failure to maintain them relates to contract performance.

Finally, even on a narrow read of the "failure to prosecute work" standard at 48 C.F.R. § 52.249-10(a), termination for default was appropriate here. AECI itself admits that if a contractor fails to maintain payment and performance bonds, the contract will be terminated. The government is allowed to terminate contracts for default when it knows that the contractor will be unable to complete the work. *McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1016 (Fed. Cir. 2003) (exercising default provision requires a reasonable belief that there was no reasonable likelihood the contractor would be able to perform the entire project in the allotted time). So termination was appropriate here, under § 52.249-10(a), because the government knew that AECI could not complete the project because it had no proper bonds in place.

B

AECI makes two related arguments. First, AECI suggests that it complied with § 52.228-15, the requirement

for performance and payment bonds, when it secured the Liberty bonds at the outset of the contract. However, AECI itself admits that the bonds are a condition to both starting and *continuing* work on the contract. Because § 52.228-15 requires maintaining bonds through the term of the work, merely furnishing bonds at the outset of the contract is not enough to constitute compliance.

Second, § 52.228-2 requires that contractors must furnish additional securities if a surety becomes unacceptable to the government. AECI argues that the Navy cannot find bonds acceptable and then later reverse course and determine that the surety is unacceptable. For one, AECI cites no authority for this argument. Moreover, this argument does not comport with the plain meaning of § 52.228-2. That regulation specifically pertains to situations where a surety on a bond subsequently becomes unacceptable to the government. Therefore, it only applies to situations where the government accepts a bond in the first place, then later determines the surety is unacceptable. In those situation, additional security is required.

These two regulations afford no relief for AECI. Instead, they confirm that the Navy had solid grounds for terminating the contracts.

## C

AECI presents several arguments that fall generally under the rubric of excusable default. Overall, AECI asserts that the Navy's investigation of the replacement PIC bonds was inadequate, and that if the Navy had done a proper investigation, it would have caught the fraud before it approved the PIC bonds. Even if true, there is nothing about the Navy's investigation that relieves AECI of its responsibility for the breach.

Under various theories of liability, AECI argues that the Navy's review and approval is relevant because: (1) the Navy breached its agreement with AECI, (2) the Navy

owes an independent duty to AECI when investigating bonds; (3) the Navy's review and approval excuses default under 48 C.F.R. § 52.249-10(b); (4) the Navy caused AECI's bonding problem, so *Airport Industrial* does not apply; and (5) the Navy violated its duty of good faith and fair dealing under this contract.

"In order for a private contractor to bring suit against the Government for violation of a regulation, that regulation must exist for the benefit of the private contractor." *Freightliner Corp. v. Caldera,* 225 F.3d 1361, 1365 (Fed. Cir. 2000). This general proposition essentially excludes each of AECI's arguments regarding the Navy's flawed review and approval of the PIC bonds.

The CFC found that the Navy's review and approval of bonds is for the government's benefit—not for the benefit of AECI. This is consistent with the statutory description of these bonds. Performance bonds are "for the protection of the Government." 40 U.S.C. § 3131(b)(1). Payment bonds are "for the protection of all persons supplying labor and material and carrying out the work provided for in the contract for the use of each person." 40 U.S.C. § 3131(b)(2). Logic dictates that, if the bonds are for the protection of the government and third party suppliers, then the investigation of the bonds is also for the benefit of those parties.

AECI suggests that, when the government fails to follow its own written procedures for investigating bonds, then contractors are at risk of losing their contracts. Put another way, the government's approval of a fraudulent bond makes the contractor vulnerable to a termination for default. And therefore, AECI argues, the government owes a duty to the contractor when reviewing bonds. This argument ignores the fact that the contractor has total control over procuring bonds in the first place. AECI sought replacement bonds from PIC, and submitted them to the government. AECI's acquisition of fraudulent bonds

exposed it to the risk of having the contract cancelled. The government reviews those bonds, submitted by the contractor, to ensure they provide adequate protection. The government does not review the bonds in the interest of catching the contractor's own mistakes. Therefore, we agree with the CFC that the Navy's review and approval of bonds is done for the benefit of the government.

However, the court must also address AECI's claims that the Navy violated a specific Federal Acquisition Regulation ("FAR") or policy.[3] *See Chris Berg, Inc. v. United States*, 426 F.2d 314, 317 (Ct. Cl. 1970) (different parts of the FAR may have different purposes, and some of them may be for the benefit of the contractor). AECI argues that the Navy violated two provisions in the Naval Facilities Engineering Command ("NAVFAC") Contracting Manual (P-68).

Part 28.102-1(b) of the NAVFAC manual instructs contracting officers to contact the surety directly when authenticating bonds, as opposed to contacting a surety agent's office. In this case, the Navy contacted the agent who perpetrated the fraud, instead of contacting PIC directly. And part 28.106-2 of the manual specifies that a Level III contracting officer has to approve substituting an original bond with a replacement one. In this case, a contracting officer who is not a Level III officer returned the Liberty bonds and approved the substitution with PIC bonds.

The NAVFAC P-68 contracting manual provides general guidance to Navy contracting officers. "It is not a stand-alone document, but must be read together" with the FAR and other Navy and Department of Defense acquisition regulations. NAVFAC P-68, 1.301. We agree

---

[3]     Federal Acquisition Regulations are codified at Title 48, Chapter 1 of the C.F.R.

that both parts 28.102-1(b) and 28.106-2 exist for the benefit of the government, and not for the benefit of private contractors. These are internal operating procedures that give the Navy the information it needs to decide whether to approve the bonds. *See, e.g.*, *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538 (1970) (rules intended to provide the government with necessary information to reach an informed decision do not benefit private contractors); *Freightliner Corp. v. Caldera*, 225 F.3d 1361, 1365 (Fed. Cir. 2000) (internal operating procedures that ensure contract officers are acting in the best interest of the government are not for the benefit of private contractors). Since the review of the bonds exists for the benefit of the government, AECI cannot establish breach or shift liability to the Navy for failure in the review procedures.

Relatedly, AECI argues that the government's flawed review of the bonds should excuse its default. Termination for default is not appropriate where the "delay in completing the work arises from unforeseeable causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include . . . (ii) acts of the Government in either its sovereign or contractual capacity . . . ." 48 C.F.R. § 52.249-10(b). Here, the Navy did not cause this default. The Navy might have caused the default if it breached its agreement with AECI, *see Airport Indus. Park, Inc. v. United States*, 59 Fed. Cl. 332, 338 (2004), if it failed to communicate obligations to AECI, or if it otherwise failed to satisfy terms of its agreement with AECI, *e.g.*, *United Partition Sys., Inc. v. United States*, 90 Fed. Cl. 74 (2009); *Abcon Assoc., Inc. v. United States*, 49 Fed. Cl. 678 (2001). But in the present case, AECI caused this default. AECI procured and submitted the bonds—later found to be fraudulent and invalid—and that caused the default.

Finally, AECI argues that the Navy breached the implied duty of good faith and fair dealing. According to

AECI, it had a reasonable expectation the Navy would follow its own procedures when investigating the PIC bonds. By failing to comply with those procedures, the Navy effectively denied AECI the benefits of the contract. *See Metcalf Constr. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014) (defining the implied duty of good faith and fair dealing).

However, the implied duty of good faith and fair dealing cannot expand a party's contractual duties. This means that "an act will not be found to violate the duty . . . if such a finding would be at odds with the terms of the original bargain, . . . by altering the contract's discernible allocation of risks and benefits . . ." *Id.* In this case, the Navy and AECI struck a bargain that included AECI furnishing valid payment and performance bonds, which by definition must be supported by an approved surety. 48 C.F.R. § 52.228-15(d). AECI failed to do that. Requiring the Navy, as a contractual duty, to catch AECI's mistake would expand the government's duties.

## D

AECI also argues that the Navy knew this particular agent was submitting fraudulent bonds. As such, the Navy should not have approved them. The question here turns on whether the Navy knew this agent was submitting fraudulent bonds. *See J.A. Jones Constr. Co. v. United States*, 182 Ct. Cl. 615, 619–20 (1968). And AECI has failed to point to any evidence establishing the Navy knew about the fraudulent bonds before it investigated the bonds under these contracts.

## E

Finally, AECI argues that the Navy had an opportunity to rescind its return of the Liberty bonds, and that the Navy was unreasonable when it refused to demand Liberty reinstate them. However, AECI cites no legal

authority for this argument and fails to allege facts that establish the Navy had such an opportunity.

CONCLUSION

Because AECI has failed to establish any grounds for excusing its material breach or otherwise shifting liability to the Navy, the CFC's decision to dismiss these claims is affirmed.

**AFFIRMED**

No costs.