**HERCULES INCORPORATED,**
Plaintiff–Appellant,

v.

**UNITED STATES, Defendant–Appellee.**

No. 01–5103.

United States Court of Appeals,
Federal Circuit.

June 5, 2002.

Robert K. Huffman, Mayer, Brown & Platt, of Washington, DC, argued for plaintiff-appellant. With him on the brief was Robert L. Bronston.

Lawrence N. Minch, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Robert E. Kirschman, Assistant Director.

Before MAYER, Chief Judge, BRYSON and PROST, Circuit Judges.

MAYER, Chief Judge.

Hercules, Inc., appeals the March 28, 2001, judgment of the United States Court of Federal Claims which followed the grant of partial summary judgment to the United States. *Hercules Inc. v. United States,* 49 Fed. Cl. 80 (2001). Because the Court of Federal Claims properly determined that the Cost Accounting Standards (CAS), 48 C.F.R. §§ 9904.406 and 9904.410–40(b)(1), are not inconsistent with the contract's incorporated Federal Acquisition Regulations (FAR), 48 C.F.R. §§ 31.205–41, 52.216–7(h)(2), and 31.201–5, we affirm.

*Background*

Hercules operates several facilities that provide supplies and services to the Department of Defense. One such facility is the Radford Army Ammunition Plant, a government-owned, contractor-operated, facility in Virginia, which functioned under a series of cost-reimbursement contracts from 1941 through 1994. The contracts entitled Hercules to be reimbursed by the Army for allowable costs that were allocable to the contracts. Effective January 1, 1995, Hercules began operating the Radford plant on a firm fixed-price contract basis. The contract at issue (Contract No. DAAA09–86–Z–003) incorporated three standard FAR clauses: (1) "Taxes", FAR § 31.205–41; (2) "Allowable Cost and Payment", FAR § 52.216–7; and (3) "Credits", FAR § 31.201–5, that directly relate to the refund of taxes for which Hercules was reimbursed under the contract.

Until September of 1987, when it sold its shares in the venture, Hercules was a joint venture owner of Himont, Inc., a plastics and resins manufacturer. The capital gain from the sale substantially increased its Virginia taxable income, and hence its state income and franchise tax liability. Hercules advised the contracting officer that its 1987 state income and franchise tax liability would be about $12.7 million, with $6.9 million allocated to the government. The contracting officer disallowed a

portion of Hercules's 1987 Virginia income tax costs that were attributable to the capital gain realized by Hercules from selling its ownership stake in Himont, Inc. Hercules then submitted a certified claim pursuant to the Contract Disputes Act (CDA), demanding payment of the disallowed amount. After the claim was denied, Hercules filed a complaint in the Court of Federal Claims seeking a judgment for the amount of the disallowed taxes. The court held that the payment of income taxes to Virginia by Hercules was an allowable cost of performing the contract and that the tax was allocable to the Radford facility. *Hercules, Inc. v. United States*, 22 Cl.Ct. 301, 305–307 (1991). The court also denied summary judgment on the propriety of the method Hercules had used to allocate its tax costs to the Radford facility because further evidence on the issue was required. *Id.* at 310.

At a subsequent hearing, the government stipulated to an allocation of Hercules's 1987 Virginia income tax to the Radford contract that resulted in a reimbursable cost of $4,870,466.00. On August 17, 1992, the court entered judgment for Hercules in accordance with the government's stipulation. *Hercules, Inc. v. United States*, 26 Cl.Ct. 662, 666 (1992). In December of 1992, Hercules received the proceeds from the court's judgment, including interest, in the total amount of $6,673,808.50.

During the pendency of the case, Hercules requested a tax refund from Virginia for its 1987 taxes. Pursuant to a settlement agreement between Hercules and Virginia dated June 21, 1995, it received a $10.5 million refund of its 1987 taxes. The government and Hercules disagreed on the amount of the refund that was reimbursable to the government. After a series of unsuccessful negotiations, the contracting officer issued a final decision demanding that Hercules refund forty-five percent,

$4,725,000, of the $10.5 million refund. The requested percentage was equal to the percentage of tax liability paid by the government to Hercules under the Radford facility contract for its 1987 Virginia taxes.

Hercules paid the government $880,000, in March of 1998, and another $41,710.72 in April of 1999. Thus, the amount owing pursuant to the contracting officer's final decision was reduced to $3,803,289.28, plus interest. The court awarded the government the outstanding amount and determined that the government's share of the 1987 Virginia tax refund must be calculated using the same apportionment factors employed to determine the previously reimbursed amount of the taxes. Hercules appeals.

*Discussion*

We have jurisdiction over this appeal from a final judgment of the Court of Federal Claims under 28 U.S.C. § 1295(a)(3). "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Barseback Kraft AB v. United States*, 121 F.3d 1475, 1479 (Fed.Cir.1997). When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "We review the summary judgment of the Court of Federal Claims, as well as its interpretation and application of the governing law, *de novo.*" *Gump v. United States*, 86 F.3d 1126, 1127 (Fed.Cir.1996).

█ Contract interpretation begins with the plain language of the written agreement. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed.Cir. 1996). "In contract interpretation, the

plain and unambiguous meaning of a written agreement controls." *Craft Mach. Works, Inc. v. United States,* 926 F.2d 1110, 1113 (Fed.Cir.1991). The contract must be construed to effectuate its spirit and purpose giving reasonable meaning to all parts of the contract. *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed. Cir.1991).

Hercules challenges the Court of Federal Claims' conclusion that the incorporated FAR "Taxes," "Credits," and "Allowable Cost and Payment" clauses do not conflict with CAS 406 because CAS 406 does not require that a tax refund be allocated as an independent indirect cost. It contends that its contracts with the government are subject to the CAS, and that CAS 406 requires it to follow consistent historical cost accounting practices of accumulating state income tax refunds as part of the measurement of tax costs in the year in which such refunds were received.

■ The government responds that this is a matter of contract interpretation, that the incorporated FAR clauses, as interpreted in *Grumman Aerospace Corp. v. United States,* 218 Ct.Cl. 441, 587 F.2d 498 (1978), clearly instruct that any refund of a tax that has been allowed as a contract cost must be credited or paid to the government utilizing the same factors by which the costs were originally determined to be reimbursable. It contends that its entitlement to a share of the 1987 Virginia tax refund is a contractural right that is not affected by any cost accounting practices being used by Hercules. We agree with the government that the incorporated FAR clauses determine the outcome of this case and that there is no conflict between the incorporated FAR clauses and the CAS in this instance.

■ "The CAS encompasses a series of accounting standards intended to achieve uniformity and consistency in measuring, assigning, and allocating costs to contracts with the federal government." *Rice v. Martin Marietta Corp.,* 13 F.3d 1563, 1565 (Fed.Cir.1993). The specific purpose of CAS 406 "is to provide criteria for the selection of the time periods to be used as cost accounting periods for contract cost estimating, accumulating, and reporting." 48 C.F.R. § 9904.406–20 (2001). The purpose of CAS 410 "is to provide criteria for the allocation of business unit general and administrative (G & A) expenses to business unit final cost objectives based on their beneficial or causal relationship." *Id.* § 9904.410–20. Neither CAS 406 nor CAS 410 addresses how to calculate the amount of contractor liability to the government for tax refunds that have been allocated and reimbursed pursuant to the contracts that were in-force during the tax year. Instead, the requirements for the handling of tax refunds are within the scope of the incorporated FAR clauses not the CAS. Thus, although CAS 406 requires a contractor to be consistent in its assignment of adjustments to expense to particular years, it does not grant the contractor immunity from specific FAR provisions governing the treatment of particular cost-related items, such as tax refunds. In this regard, the general requirement of consistent treatment of adjustments to expense is quite different from the specific CAS requirement regarding the allocation and assignment of pension costs that was held to prevail over an inconsistent DAR provision in *United States v. Boeing Co.,* 802 F.2d 1390 (Fed.Cir.1986).

The "Taxes" clause, FAR § 31.205–41(d), which addresses the crediting of refunded taxes that were allowed contract costs, provides in relevant part:

Any taxes, interest, or penalties that were allowed as contract costs and are refunded to the contractor shall be credited or paid to the Government in the manner it directs.... However, any interest actually paid or credited to a con-

tractor incident to a refund of tax, interest, or penalty shall be paid or credited to the Government only to the extent that such interest accrued over the period during which the contractor had been reimbursed by the Government for the taxes, interest, or penalties.

48 C.F.R. § 31.205–41(d) (2001). We construe the language of the "Taxes" clause to require that refunded taxes, which have been allocated to a cost-reimbursable contract, shall in turn be passed through to the government using the same apportionment factors that were used to determine the amount of the previously reimbursed cost.

The "Allowable Cost and Payment" clause, FAR § 52.216–7(h)(2), which entitles the government to a credit or refund, provides in relevant part:

> The Contractor shall pay to the Government any refunds, rebates, credits, or other amounts (including interest, if any) accruing to or received by the Contractor or any assignee under this contract, to the extent that those amounts are properly allocable to costs for which the Contractor has been reimbursed by the Government.

48 C.F.R. § 52.216–7(h)(2) (2001). The incorporated "Credits" clause, FAR § 31.201–5, which entitles the government to its portion of a credit relating to allowable costs, provides in relevant part:

> The applicable portion of any income, rebate, allowance, or other credit relating to any allowable cost and received by or accruing to the contractor shall be credited to the Government either as a cost reduction or by cash refund.

48 C.F.R. § 31.201–5 (2001). The principal requirement of the "Allowable Cost and Payment" and "Credits" clauses is to provide the government with a refund when a cost that has been reimbursed to a contractor is later reduced.

Hercules further challenges the Court of Federal Claims' conclusion that *Grumman Aerospace Corp. v. United States*, 218 Ct. Cl. 441, 587 F.2d 498 (1978), is applicable to contracts governed by the CAS and is controlling in this case. It contends that *Grumman* is obsolete because it was decided before the implementation of CAS, which requires consistent cost accounting practices.

We think this case is indistinguishable from *Grumman*, which construed clauses of the Armed Services Procurement Regulation (ASPR)[1] almost identical to the FAR clauses at issue here. *Id.* at 504. The court construed these analogous clauses to require that refunded taxes be passed through to the government using the same apportionment factors that were used to determine the amount of the previously reimbursed cost. *Id.* at 505. Factually in that case, the government had reimbursed Grumman pursuant to a cost-reimbursement contract for a New York corporation franchise tax for the year 1968. Grumman suffered an operating loss in 1971 and later received a refund reducing its 1968 New York taxes; much like Hercules received a refund reducing its 1987 Virginia taxes here. The court reasoned that Grumman's reliance on how generally accepted accounting principles and sound accounting logic might treat a refund for accounting purposes, similar to Hercules' argument here, was misplaced

---

1. In 1983, the General Services Administration, Department of Defense, and NASA established new Federal Acquisition Regulations (FAR) in Title 48 of the Code of Federal Regulations. The FAR replaced the Defense Acquisition Regulations (DAR) as of April 1, 1984. The DAR, in turn, had replaced the Armed Services Procurement Regulations (ASPR), which had comprised the first three volumes of Title 31 of the Code of Federal Regulations. *See FMC Corp. v. United States*, 853 F.2d 882, 884 n. 2 (Fed.Cir.1988).

because the contract language controlled. *Id.* at 506. The court concluded that Grumman's 1968 franchise tax costs having been reduced by a subsequent refund contractually entitled the government to its proper share of that reduction computed on the basis of its 1968 reimbursement of such costs. *Id.* at 505. This same result appertains here. In addition, we are unconvinced by Hercules' arguments that *Grumman* is inapplicable to the present contract because it was decided under the Wunderlich Act and because Grumman failed to show that it had a consistent practice of accounting for tax refunds in the year of their receipt. The court's decision in *Grumman* was a straightforward legal construction of the applicable ASPR clauses that was not influenced by either of the distinguishing factors on which Hercules relies.

Finally, Hercules argues that the court erred in refusing to apply *Litton Systems, Inc. v. United States*, 196 Ct.Cl. 133, 449 F.2d 392 (Ct.Cl.1971), which precludes the government from requiring a contractor to make a retroactive change to an incorrect cost allocation method without first giving the contractor reasonably adequate notice that it no longer approves of the contractor's long-standing and consistent accounting practice. Hercules contends that the court's refusal was erroneously based on a finding that its cost allocation method, of applying the allocation base of state income tax refunds in the year in which they were received, was not reasonable and that the balance of equities weighed against it.

We think *Litton* is not applicable here because (1) CAS is not inconsistent with the contract's incorporated FAR clauses, as construed by *Grumman*, and (2) Hercules suffers no undue prejudice by being required to determine the government's share of the Virginia tax refund using the 1987 apportionment factors, as required by the contract.

*Conclusion*

Accordingly, the judgment of the United States Court of Federal Claims is affirmed.

*AFFIRMED.*