# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Dellew Corporation | )     ASBCA No. 58538 |
| | ) |
| Under Contract No. FA5215-08-C-0008 | ) |

APPEARANCES FOR THE APPELLANT:    Jonathan A. DeMella, Esq.
Kate H. Kennedy, Esq.
  Dorsey & Whitney, LLP
  Seattle, WA

James F. Nagle, Esq.
  Oles Morrison Rinker & Baker, LLP
  Seattle, WA

APPEARANCES FOR THE GOVERNMENT:    Lt Col James H. Kennedy III, USAF
  Air Force Chief Trial Attorney
Michelle D. Coleman, Esq.
Christine C. Piper, Esq.
  Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE PAGE ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Dellew Corporation (Dellew or appellant) seeks to recover $279,558 in unrecovered amounts and settlement and proposal preparation costs following the termination of its contract for the convenience of the Department of the Air Force, 15th Contracting Squadron (AF or government). The government moves for summary judgment (gov't mot.), arguing that appellant cannot recover these costs; appellant opposes the motion and seeks partial summary judgment (app. opp'n). We grant the government's motion in part and deny appellant's cross-motion.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS

1. On 18 July 2008, the government and Dellew entered into Contract No. FA5215-08-C-0008, a firm-fixed-price FAR Part 12 commercial items contract to provide Awards and Decorations (A&D) and Personnel Systems Management (PSM)

support services for Military Personnel Flight at various Air Base locations (R4, tab 1; gov't mot. at 9; app. opp'n at 5, ¶ 2).[1]

2. Contract line item number (CLIN) 4001 provides for A&D and PSM support services at Eielson and Elmendorf Air Force Bases (AFBs) in Alaska for option year four. SubCLIN 4001AA is listed as 12 one-month units at a unit price of $18,887.52 for A&D and PSM support services at Eielson AFB. SubCLIN 4001AB lists a unit price of $25,547.17 for 12 one-month units to provide A&D and PSM support services at Elmendorf AFB. CLINs 4002-4005, and their respective subCLINs, list pricing for A&D and PSM support services at an additional seven AFBs. All CLINs provide for 12 one-month units to be exercised during the period of performance under option year four from 1 April 2012 – 31 March 2013. (R4, tab 1 at 27-31)[2]

3. The contract incorporated by reference FAR clause 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (FEB 2007). The clause states in pertinent part:

> (l) *Termination for the Government's convenience.* The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. *Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination.* The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid

---

[1] Each party proffered a proposed statement of facts in its respective brief. Appellant stipulated to "the facts set forth in ¶¶ 1, 2, 4-20 of Respondent's Motion for Summary Judgment 'Statement of Material Facts'" (app. opp'n at 5). Further, the "Government does not dispute ¶¶ 2-6, 8-9, 11 and 13-14 of Dellew's 'Statement of Material Facts'" (gov't opp'n at 6).

[2] For purposes of identifying references to the record, we adopt the sequential pagination of documents as affixed by the parties to the Rule 4 file.

2

for any work performed or costs incurred which reasonably could have been avoided.

(R4, tab 1 at 44) (Emphasis added)  The contract also included FAR clause 52.217-9, OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000) (R4, tab 1 at 49).

4.  By bilateral contract Modification No. P00010 and, pursuant to FAR 52.212-4 and FAR 52.217-9, the government exercised option year four on 29 February 2012, effective 1 April 2012 (R4, tab 2).  The modification incrementally funded the contract in the amount of $1,118,689.62, which represents the funding for six months (1 April 2012 through 30 September 2012) of the one-year option period, which would have ended on 31 March 2013 (gov't mot. at 9; app. opp'n at 5).

5.  Bilateral Modification No. P00010 (R4, tab 2) also incorporated by full text DFARS clause 252.232-7007, LIMITATION OF GOVERNMENT'S OBLIGATION (MAY 2006) which provided in part:

> (a) Contract line items 4001 through 4005 are incrementally funded.  For these items, the sum of $1,118,689.62 of the total price is presently available for payment and allotted to this contract....
>
> (b) For items(s) [sic] identified in paragraph (a) of this clause, the Contractor agrees to perform up to the point at which the total amount payable by the Government, including reimbursement in the event of termination of those item(s) for the Government's convenience, approximates the total amount currently allotted to the contract.  The Contractor is not authorized to continue work on those item(s) beyond that point.  The Government will not be obligated in any event to reimburse the Contractor in excess of the amount allotted to the contract for those item(s) regardless of anything to the contrary in the clause entitled "TERMINATION FOR THE CONVENIENCE OF THE GOVERNMENT."  As used in this clause, the total amount payable by the Government in the event of termination of applicable contract line item(s) for convenience includes costs, profit and estimated termination settlement costs for those item(s).
>
> (c) Notwithstanding the dates specified in the allotment schedule in paragraph (j) of this clause, the Contractor will notify the Contracting Officer in writing at least <u>ninety</u>

3

days prior to the date when, in the Contractor's best judgment, the work will reach the point at which the total amount payable by the Government, including any cost for termination for convenience, will approximate 85 percent of the total amount then allotted to the contract for performance of the applicable item(s).... If after such notification additional funds are not allotted by the date identified in the Contractor's notification, or by an agreed substitute date, the Contracting Officer will terminate any item(s) for which additional funds have not been allotted, pursuant to the clause of this contract entitled "TERMINATION FOR THE CONVENIENCE OF THE GOVERNMENT."

....

(h) Nothing in this clause affects the right of the Government to [terminate] this contract pursuant to the clause of this contract entitled "TERMINATION FOR CONVENIENCE OF THE GOVERNMENT."

(R4, tab 2 at 66-67)

6. DFARS 252.232-7007(c) is located within DFARS Subpart 232.7, CONTRACT FUNDING. DFARS Subpart 232.7 permits a firm-fixed-price contract, which normally must be fully funded, to be incrementally funded. DFARS 232.703-1, GENERAL.

7. By letter dated 2 April 2012, the government notified Dellew that the subject contract was terminated for the government's convenience effective 1 October 2012. Dellew acknowledged receipt of the notice by signature on 2 April 2012. (R4, tab 3)

8. The termination notice provided:

Should the termination result in any costs directly related to the termination, please provide sufficient documentation to demonstrate such charges in accordance with FAR 52.212-4(l). Please provide any documentation by 9 July 2012.

(R4, tab 3)

4

9. Dellew submitted a letter to the government, dated 1 May 2012, with the subject line "Funding Notification for Contract No. FA5215-08-C-0008." The letter stated:

> Per DFARS Clause 252.232-7007(c) we are providing 90 day written notice of the total amount payable by the Government, including any cost for termination for convenience, and on which Dellew expects the amount to be paid will approximate 85 percent of the total amount currently allocated, $1,118,689.62. Specifically:
>
> 1. The estimated date when the 85 percent amount will be reached is: July 31, 2012.
>
> 2. The estimated amount of additional funding, if any, needed to continue performance through to September 30, 2012, is: $250,000 to $300,000.
>
> In connection with the April 2, 2012 letter from James K. Watanabe indicating that the contract is terminated for the Government's convenience effective October 1, 2012, Dellew estimates that, in addition to the contract amounts billed, Dellew will incur settlement expenses and termination costs in the range of $250,000 to $300,000. These costs include overhead costs continuing after the termination, net of estimated mitigation, employee paid time off and vacation pay accumulated at the date of termination, settlement expenses and proposal preparation costs, and profit on those costs consistent with the margin on the terminated contract.

(R4, tab 4)

10. The government did not respond to Dellew's 1 May 2012 letter (app. opp'n ¶ 4).

11. Effective 29 June 2012, the parties executed Modification No. P00012. The modification incorporates a Department of Labor wage adjustment and increases the total amount of option year four by $359.58 from $1,118,689.62 to $1,119,049.20. (Gov't mot. at 12, attach. 1; app. opp'n at 5) The government paid Dellew

5

$1,119,096.72 for its performance from 1 April 2012 to 30 September 2012 during option year four (gov't mot. at 13, attach. 2; app. opp'n at 5).[3]

12. Modification No. P00011 dated 28 June 2012 terminated the contract for the government's convenience effective 1 October 2012 (R4, tab 5).

13. The record contains an undated termination settlement proposal (TSP) for the amount of $279,641 (R4, tab 6). Dellew stated, "this proposal is of necessity based on projected costs and company operations subsequent to May 31, 2012, both through the termination date of September 30, 2012, and through the expiration of the full Option IV period ending March 31, 2013" (*id.* at 118). Dellew provided the following cost elements as summarized below:[4]

| | | | |
|---|---|---|---|
| PACAF[5] Anticipated Total Cost to 9-30-12 (Based on Actual 4/1 to 5-31 plus projected to 9-30-12) | NOTE | $ | 665,059 |
| G&A Expense (Used Actual Rate 1/1/12-5/31/12) | 26.73% | $ | 177,770 |
| Unrecovered Mitigated G&A 10/1/12-3/31/13 | | $ | 173,024 |
| Total Direct Cost | | $ | 1,015,854 |
| Profit (Used Actual from FY 2011 Financial Summary) | 35.09% | $ | 356,466 |
| | | $ | 1,372,319 |
| Less: Earned Contract Amount | | $ | (1,118,690) |
| | | $ | 253,630 |
| Add: Settlement Expenses | 20,525 | | |
| G&A on Settlement Expenses | 5,486 | $ | 26,011 |
| | | $ | 279,641 |

(*Id.* at 119)

---

[3] Appellant's calculation of its termination settlement proposal credits the government with having paid only $1,118,690.00, not the $1,119,096.72 paid pursuant to Modification No. P00012. Dellew later revised its proposal. The revised termination settlement proposal recognized the $1,119,096.72 payment. (Gov't mot., attach. 2) The difference is inconsequential for the determination of entitlement.

[4] Appellant apparently rounded some calculations upward to the nearest dollar.

[5] Eielson AFB and Elmendorf AFB are part of the U.S. Air Force's Pacific Air Forces (PACAF) Command. *See* www.pacaf.af.mil.

14. In response to the government's request for further detail regarding Dellew's TSP, Dellew provided the following breakdown of its costs:

| DELLEW CORPORATION - TERMINATION SETTLEMENT PROPOSAL CALCULATION | | | 4/1 to 9/30/2012 | G&A 10/1/12 to 3/31/13 | Settlement Expenses |
|---|---|---|---|---|---|
| PACAF Anticipated Total Cost to 9-30-12 | | | | | |
| (Based on Actual 4/1 to 5-31 plus projected to 9-30-12) | NOTE | $ 665,059 | $ 665,059 | | |
| G&A Expense (Used Actual Rate 1/1/12-5/31/12) | 26.73% | $ 177,770 | $ 177,770 | | |
| Unrecovered Mitigated G&A 10/1/12-3/31/13 | | $ 173,024 | | $ 173,024 | |
| Total Direct Cost | | $ 1,015,854 | | | |
| Profit (Used Actual from FY 2011 Financial Summary) | 35.09% | $ 356,466 | $ 295,751 | $ 60,715 | |
| | | $ 1,372,319 | | | |
| Less: Earned Contract Amount | | $ (1,118,690) | $ (1,118,690) | | |
| | | $ 253,630 | | | |
| Add: Settlement Expenses | 20,525 | | | | 20,525 |
| G&A on Settlement Expenses | 5,486 | $ 26,011 | | | 5,486 |
| | | $ 279,641 | $ 19,891 | $ 233,739 | $ 26,011 |

(R4, tab 7 at 125) (Emphasis in original)

15. On 4 September 2012, the government proposed settlement in the amount of $26,011 (R4, tab 7). In the proposed settlement letter, the government stated that it had determined Dellew's "settlement expenses" to be acceptable but did not accept any other proposed expenses (*id.* at 123).

16. By letter dated 7 September 2012, Dellew submitted a certified claim for $279,641, the full claimed amount of its TSP. The claim stated that Dellew decided to submit a claim because it thought it was unlikely that Dellew and the government were in a position to negotiate a mutually acceptable settlement. The claim was certified pursuant to FAR 33.207. (R4, tab 8)

17. The contracting officer's final decision (COFD) was issued on 9 November 2012, granting Dellew's claim in part and denying the claim in part. The contracting officer (CO) accepted $26,011 for "settlement expenses" subject to Dellew's submission of invoices supporting all costs incurred. The CO denied Dellew's claim for $253,630 for proposed termination costs "for the contract performance period of 1 April 2012 – 30 September 2012 and termination period of 1 October 2012 – 31 March 2013." Concerning the performance period of 1 April 2012 – 30 September 2012, the CO stated:

7

[Dellew] received full payment for the six months of performance via Modification P00010.... The Government rejects Dellew's proposed termination cost for the performance period because full compensation was paid to Dellew on the firm-fixed-price contract.

Regarding the "Termination Period of 1 October 2012 – 31 March 2013," the CO stated:

The Government rejects Dellew's proposed termination costs for the non-performance period.... Anticipatory and projected total costs, including G&A and profit, are denied consistent with FAR Part 12.403(d)(1)....

(R4, tab 10)

18. The COFD was received on 13 November 2012 and on 4 February 2013 Dellew filed a timely notice of appeal from the COFD (R4, tab 11).

19. Dellew submitted a revised termination settlement proposal dated 5 September 2013 in the amount of $297,558. The letter advised:

[O]ur updated proposal [is] based on Dellew['s] actual costs for additional costs related to the termination of contract Option Year IV as of September 30, 2012, in the amount of $297,558.

Our original proposal dated July 9, 2012, was of necessity based on projected costs and company operations subsequent to May 31, 2012, both through the termination date of September 30, 2012, and through the expiration of the full Option IV period ending March 31, 2013. This proposal is an update of our original submittal based on actual costs incurred on the terminated contract.

(Gov't mot., attach. 3)

8

20. The revised proposal included the following costs:

**Unrecovered Amount-Contract Performance Period**

| | | | |
|---|---|---|---|
| PACAF Actual Cost 4/1/12 to 9-30-12 | | | $706,036 |
| G&A Expense (Audited 2012 Rate) | 25.97% | Page 4 | $183,358 |
| Subtotal | | | $889,394 |
| Profit Markup-As Estimated | 30.00% | | $266,818 |
| Total Cont[r]act Value Including Overhead and Profit | | | $1,156,212 |
| Less: Earned Contract Amount | | | $(1,119,049) |
| Unrecovered Cost–Contract Performance Period | | | $37,163 |

**Unrecovered Home Office Overhead**

| | | | |
|---|---|---|---|
| Unrecovered Mitigated Home Office Overhead– 10/1/12-3/31/13 | | $168,582 | |
| Profit | 30.00% | $50,574 | $219,156 |
| Total Amounts Requested Before Settlement Expenses | | | $256,319 |

**Settlement & Proposal Preparation Costs**

| | | | |
|---|---|---|---|
| Settlement & Proposal Preparation Costs | | $32,738 | |
| G&A Expense (Audited 2012 Rate) | 25.97% | $8,502 | $41,240 |

| | |
|---|---|
| TOTAL AMOUNT REQUESTED BASED ON ACTUAL COSTS | $297,558 |

(Gov't mot., attach. 3)

## DECISION

The government filed a motion for summary judgment arguing that pursuant to the termination for convenience clause in the contract, appellant is not entitled to any termination settlement costs as a matter of law (gov't mot. at 17, 47). Appellant opposes the government's motion for summary judgment in the entirety, and has filed a cross-motion for summary judgment asking this Board to hold that "Dellew is entitled to recovery under each element of cost in its termination settlement proposal – including its claim for post-termination overhead" (app. opp'n at 2).

Summary judgment is appropriate where, drawing all inferences in the nonmovant's favor, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Substantive law dictates the parties' relative burdens, and defines "material" facts as those that may affect the outcome of a particular cause of action. *HTA Aviation, LLC*, ASBCA No. 57891 *et al.*, 14-1 BCA ¶ 35,556 at 174,237 (citing *Osborne Constr. Co.*, ASBCA No. 55030, 09-1 BCA ¶ 34,083 at 168,512).

9

The fact that both parties have moved for summary judgment and assert that there are no genuine issues of material fact regarding their respective legal positions does not mean that the tribunal must grant judgment as a matter of law for one side or the other. *Mingus Constructors*, 812 F.2d at 1391. Each motion is evaluated separately on its merits, and all reasonable inferences are drawn in favor of the defending party. *Osborne Constr.*, 09-1 BCA ¶ 34,083 at 168,513. "Merely because a party has moved for summary judgment and avers there are no genuine issues of fact precluding its recovery does not mean that it 'concede[s] that no issues remain in the event [that its] adversary's theory is adopted.'" *Id.* (quoting *Mingus Constructors*, 812 F.2d at 1391).

*Contract Interpretation*

A major element of the parties' dispute is an issue of contract interpretation. The parties disagree about what portion of the contract controls appellant's TSP. The government argues that Dellew's TSP "is governed by FAR 52.212-4(l) because the subject contract is a FAR Part 12 commercial services contract" (gov't mot. at 16). Appellant argues that DFARS 252.232-7007 addresses the scope of a contractor's right to recovery in the event of a termination and that FAR 52.212-4 and DFARS 252.232-7007 must be read together (app. opp'n at 11). Specifically, appellant argues that although the government's right to terminate lies in the termination for convenience clause, FAR 52.212-4(l), "DFARS 252.232-7007 provides guidance on *when* to terminate for convenience and the *categories of recovery* to which contractors are entitled" (*id.* at 12) (emphasis in original).

"Contract interpretation begins with the plain language of the written agreement." *Hercules Inc. v. United States*, 292 F.3d 1378, 1380 (Fed. Cir. 2002); *see also LAI Services, Inc. v. Gates*, 573 F.3d 1306, 1314 (Fed. Cir. 2009); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991) (citing *Fort Vancouver Plywood Co. v. United States*, 860 F.2d 409, 413 (Fed. Cir. 1988)). The "language of a contract must be given that meaning that would be derived from the contract by a reasonable intelligent person acquainted with the contemporaneous circumstances." *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 975 (Ct. Cl. 1965) (citations omitted).

Examining the plain language of the contract, the termination for convenience clause, FAR 52.212-4(l), controls appellant's entitlement to a termination settlement amount. FAR 52.212-4(l) states that in the event that the contract is terminated for the convenience of the government:

> Subject to the terms of this contract, the Contractor shall be
> paid a percentage of the contract price reflecting the

percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system....

DFARS 252.232-7007, Limitation of Government's Obligation, states that "the total amount payable by the Government in the event of termination of applicable contract line item(s) for convenience includes costs, profit, and estimated termination settlement costs for those item(s)." DFARS 252.232-7007(b). The use of the word "shall" in FAR 52.212-4(l) establishes that the entitlement formula in the termination clause is mandatory. By comparison, the DFARS clause language is less definitive. It states that, in ascertaining whether the government has reached or is approaching the 85% limit, the "total amount payable...*includes*" certain items but makes no mandatory statement of entitlements and references "*estimated* termination settlement costs." DFARS 252.232-7007(b) (emphasis added). On its face, where FAR 52.212-4(l) includes mandatory language and contemplates actual rather than estimated costs, the contract's termination for convenience clause controls entitlement to termination settlement amounts.

Further examination of the pertinent language in the context of the full clauses in which they appear supports the conclusion that the termination clause, not the DFARS funding clauses, controls appellant's entitlement to recovery in the event of termination for convenience. FAR 52.212-4(l) reserves the government's right to terminate a contract for the government's sole convenience and is a required contract clause for commercial items contracts. FAR 12.301(b)(3). The purpose of DFARS 252.232-7007 is to act as a limitation on government obligation for contract expenditures. It controls when the contractor must notify the government that the "work will reach the point at which the total amount payable by the Government, including any cost for termination for convenience, will approximate 85 percent of the total amount then allotted to the contract." DFARS 252.232-7007(c). In this context, the language appearing at DFARS 252.232-7007(b) acts to provide the contractor with categories of termination for convenience costs to be considered when making the projections required by DFARS 252.232-7007(c).

Appellant's argument that DFARS 252.232-7007 in some way alters or amends the termination clause in the contract and allows for an additional avenue of recovery is unpersuasive. The clause is not a guarantee of reimbursement if the contract is terminated for the government's convenience, and is deferential to the termination clause in the contract. *See* DFARS 252.232-7007(h) ("Nothing in this clause affects the right of the Government to terminate this contract pursuant to the clause of this contract entitled 'Termination for Convenience of the Government.'"). There is only one instance in which the DFARS clause affects the parties' rights under the contract's termination for convenience clause; in that instance, it places further limits on the

11

government's payment obligation in the event of termination for government convenience. *See* DFARS 252.232-7007(b) ("The Government will not be obligated in any event to reimburse the Contractor in excess of the amount allotted to the contract for those item(s) regardless of anything to the contrary in the clause entitled 'Termination for Convenience of the Government.'"). None of the language in DFARS 252.232-7007 indicates that it is a remedy granting clause of the contract that would entitle a contractor to recovery of particular items in the event of a convenience termination. Ultimately, any entitlement to termination settlement expenses due appellant must be established through the process prescribed by FAR 52.212-4(l).

*Recovery under FAR 52.212-4(l)*

Resolving the parties' contract interpretation dispute with respect to the effect of DFARS 252.232-7007 *vis-a-vis* FAR 52.212-4(l) does not result in fully granting or denying either party's motion for summary judgment. We next examine Dellew's TSP to identify items of recovery under the termination for convenience clause in the contract, FAR 52.212-4(l).

The third sentence of FAR 52.212-4(l) "sets forth a procedure or process for the government to compensate fairly a contractor whose contract has been terminated for convenience." *SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,223 (citing *Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 115 (Fed. Cir. 2013)). In its entirety, the third sentence of FAR 52.212-4(l) provides:

> Subject to the terms of this contract, the Contractor shall be paid *a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges* the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination.

(Emphasis added) The Board has previously segregated this clause into two prongs allowing for the recovery of monetary amounts: "(1) a 'percentage of the contract price reflecting the percentage of work performed' and (2) 'reasonable charges' that...'have resulted from the [contract] termination.'" *See SWR*, 15-1 BCA ¶ 35,832 at 175,221; *Alkai Consultants, LLC*, ASBCA No. 56792, 10-2 BCA ¶ 34,493 at 170,134. This clause sets up a different method for determining fair compensation for the contractor in the event of termination for convenience of a commercial items contract than the methods set forth in termination for convenience clauses prescribed in FAR Part 49. *See SWR*, 15-1 BCA ¶ 35,832 at 175,224.

12

By regulation and as explained by the Board in *SWR*, there are three general categories of recovery available to a contractor terminated for convenience pursuant to FAR 52.212-4(l). A commercial items contractor terminated for the government's convenience may recover:

> (1) [T]he price of work performed under the contract prior to notice of termination, under the first prong of the termination clause;
>
> (2) settlement expenses, under the second prong of the termination clause; and
>
> (3) also under the second prong of the termination clause, costs resulting from the termination.[6]

The first prong of FAR 52.212-4(l) addresses how a contractor shall be paid for work performed under the contract prior to the notice of termination. *See SWR*, 15-1 BCA ¶ 35,832 at 175,223. While firm-fixed-price contracts containing the FAR Part 49 termination clause are essentially converted into cost-reimbursement contracts when terminated for government convenience, FAR 52.212-4(l) specifies "instead that recovery for work performed prior to termination be calculated based on contract price, i.e., as a percentage of contract price reflecting percentage of work performed prior to notice of termination." *Id.* at 175,224. This is not to say appellant would be foreclosed from recovery of reasonable expenses incurred between 1 April 2012 and 30 September 2012 in preparation for the terminated portion of the contract. *See id.* at 175,227-28 (holding that the contractor was entitled, under the second prong of FAR 52.212-4(l), to recover a deposit of $75,000 made prior to the termination for convenience while preparing to perform the contract where no percentage of the contract was ever performed).

As discussed by the Board in *SWR*, the second prong of FAR 52.212-4(l) provides for the recovery of settlement expenses. *SWR*, 15-1 BCA ¶ 35,832 at 175,231. Settlement expenses include those expenses incurred by the contractor for the preparation and presentation of settlement claims to the CO. FAR 31.205-42(g). It is well established that settlement expenses, including legal expenses, are generally allowable. *Id.* However, a contractor is only entitled to those settlement expenses that are reasonably necessary for the preparation and presentation of the termination

---

[6] During submission and review of Dellew's TSP and subsequent claim, the parties appear to refer to this third category as termination costs (separate from settlement costs) (*see* SOF ¶ 17). For the purposes of consistency of language, we adopt the parties' terminology.

13

settlement proposal. *See, e.g., Contract Maintenance, Inc.*, ASBCA No. 20689, 77-1 BCA ¶ 12,446 at 60,293-94; *see also* FAR 31.205-42(g).

The second prong of FAR 52.212-4(l) also provides for recovery of termination-associated costs, which are those reasonable costs, other than settlement costs, which are incurred by a contractor as a result of the termination. "Contract terminations generally give rise to the incurrence of costs or the need for special treatment of costs that would not have arisen had the contract not been terminated." FAR 31.205-42. The FAR provides an explanation of types of costs that are generally allowable in a termination for convenience situation. *See, e.g.,* FAR 31.205-42(b) ("costs which cannot be discontinued immediately after the effective date of termination [despite all reasonable efforts] are generally allowable. However, any costs continuing after the effective date of the termination due to the negligent or willful failure of the contractor to discontinue the costs shall be unallowable."). These costs could similarly be recoverable in a commercial items contract termination for convenience provided that the contractor can demonstrate that these resulted from the termination and are reasonable. As discussed by the Board, the second prong of FAR 52.212-4(l) provides for the "recovery of those charges incurred that 'do not relate to work completed' but should be reimbursed to fairly compensate the contractor whose contract has been terminated." *SWR*, 15-1 BCA ¶ 35,832 at 175,223. The contractor bears the burden of "proving the costs it incurred in performance of items of work that were terminated." *Id.* at 175,229 (citing, *e.g., Del. Tool & Die Works, Inc.*, ASBCA No. 14033, 71-1 BCA ¶ 8860 at 41,183). A contractor must "prov[e] the amount of loss with sufficient certainty so that the determination of the amount of damages will be more than mere speculation." *Lisbon Contractors, Inc. v. United States*, 828 F.2d 759, 767 (Fed. Cir. 1987) (quoting *Willems Indus., Inc. v. United States*, 295 F.2d 822, 831 (Ct. Cl. 1961)).

It is under this basic framework that we examine appellant's claim for termination settlement costs. Appellant's TSP seeks recovery of cost and profit, which it has divided into three general areas: (1) cost and profit for the period of contract performance from 1 April 2012 through 30 September 2012; (2) G&A/overhead costs[7] and profit for the terminated period of the contract from 1 October 2012 to 31 March 2013; and (3) settlement expenses (SOF ¶ 14).

The Board is not adequately informed as to how the costs claimed by Dellew for each time period relate to the categories of recovery available pursuant to FAR 52.212-4(l). To some extent, the categories of recovery available pursuant to FAR 52.212-4(l) correspond to the timeline of the contract's life. The first prong addresses how a contractor shall be paid for work performed prior to the notice of

---

[7] Dellew's TSP refers to these costs as G&A (SOF ¶ 14). Appellant's cross-motion refers to these costs as overhead (app. opp'n at 17-19).

termination. *See SWR*, 15-1 BCA ¶ 35,832 at 175,223. Settlement expenses cannot be incurred until after the notice of termination. However, particularly when examining charges incurred that relate to the terminated portion of the work, a timeline is not useful in determining whether the appropriate termination nexus is met, that is, whether the costs were incurred by the contractor as a result of the termination.

With respect to the first prong of FAR 52.212-4(l), there is no dispute concerning what contract work was performed by Dellew, nor what the contract price was. The relevant clause, however, instructs that the contract price be used in the convenience termination settlement with respect to the "percentage of work performed prior to the notice of termination." As the undisputed facts develop in this appeal, virtually none of the option four work was performed *prior to the notice of termination*. Neither party addresses this anomaly nor its impact on what recovery, if any, should be had respecting the first prong, the basis upon which such recovery should be calculated, or if any of the other reasonable charges claimed are properly included in the first prong by reason of this anomaly.

Additionally, we are unable to determine if the G&A costs claimed from 1 October 2012 to 31 March 2013 resulted from the termination. The record provides little to no information about what, if any, activities Dellew had to undertake after 1 October 2012 as a result of the termination. While the government argues that appellant's claim for G&A/overhead costs are categorically unallowable as a continuing cost of doing business, the second prong of FAR 52.212-4(l) may allow for recovery of indirect costs of G&A or home office overhead provided appellant can demonstrate that they resulted from the termination and are otherwise appropriate. *SWR*, 15-1 BCA ¶ 35,832 at 175,231-32. We are hampered by a lack of explanation in Dellew's TSP and such a determination is not possible based upon the record as it is currently developed.

Dellew's TSP does segregate its settlement costs. Appellant asks this Board to hold that it is entitled to settlement expenses on summary judgment (app. opp'n at 19). The government argues that these costs are unallowable or unreasonable because they were incurred while Dellew pursued an invalid approach to the TSP (gov't mot. at 44). Determination of whether appellant is entitled to settlement expenses, requires an examination of whether those costs were reasonable. *See* FAR 31.205-42(g)(i). Furthermore, to qualify as settlement expenses the costs must have been necessarily incurred for "[t]he preparation and presentation...of settlement claims to the contracting officer." FAR 31.205-42(g)(i)(A). The reasonableness of the claimed settlement expenses and their relation to the preparation of the TSP remain outstanding questions of fact requiring further evidence.

Appellant also seeks approximately 35% profit. Although the Board has held that under the second prong of FAR 52.212-4(l), fair compensation of a contractor in a

convenience termination settlement may include a "reasonable allowance for profit" (*SWR*, 15-1 BCA ¶ 35,832 at 175,232-33 (citing *General Dynamics Land Sys., Inc.*, ASBCA No. 52283, 02-1 BCA ¶ 31,659 at 156,411)), the government is not "liable for the contractor's anticipatory profits." *SWR*, 15-1 BCA ¶ 35,832 at 175,222 (citing *Torncello v. United States*, 681 F.2d 756, 759 (Ct. Cl. 1982)). There remains an outstanding question of fact as to whether the 35% profit sought by Dellew is reasonable under this contract. Furthermore, profit on work otherwise compensable under FAR 52.212-4(l) can only apply to costs which are recoverable by the contractor. We have yet to determine if appellant is entitled to any termination settlement costs which allow for recovery of a reasonable profit. Accordingly, a determination of whether appellant may be entitled to profit and if so, how much, is premature.

## CONCLUSION

We grant the government's motion for summary judgment to the extent that we agree that FAR 52.212-4(l) governs a contractor's right of recovery when a commercial items contract is terminated by the government for convenience and that this right is not expanded by DFARS 252.232-7007. In all other respects, the government's motion is denied. Appellant's cross-motion for partial summary judgment is denied.

Dated: 1 May 2015

REBA PAGE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

16

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58538, Appeal of Dellew Corporation, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

17