NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BETTY T. YEE, CALIFORNIA STATE CONTROLLER,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2018-1555

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00206-MBH, Senior Judge Marian Blank Horn.

---

Decided: June 12, 2019

---

MARTIN LOBEL, Lobel, Novins & Lamont, LLP, Washington, DC, argued for plaintiff-appellant.

ZACHARY JOHN SULLIVAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by ALLISON KIDD-MILLER, ROBERT EDWARD KIRSCHMAN, JR., JOSEPH H. HUNT.

---

Before PROST, *Chief Judge,* LOURIE and CLEVENGER, *Circuit Judges.*

PROST, *Chief Judge.*

The State of California ("California" or "State") appeals a decision by the U.S. Court of Federal Claims granting summary judgment in favor of the United States ("Government") regarding a cooperative agreement for audit services related to oil and gas royalties. Because the Court of Federal Claims's interpretation of the cooperative agreement was in error, we reverse.

I

In October 2010, the U.S. Department of the Interior ("Interior") and California entered into a cooperative agreement for audit services involving royalty collection ("the Agreement"). The Agreement was entered pursuant to the Federal Oil and Gas Royalty Management Act of 1982 (FOGRMA), Pub. L. No. 97-451, 96 Stat. 2447 (codified as amended at 30 U.S.C. §§ 1701–1759). The Agreement was drafted by Interior and was extended each year until June 30, 2016.

The audits related to oil and gas royalties owed to the Federal Government and shared with California. The United States agreed to reimburse California for allowable costs related to performing the audits. Specifically, Part 2 of the Agreement provides:

> [Interior] will reimburse the State up to 100 percent of allowable costs for audits and/or investigations of Federal oil, gas, and solid minerals leases (when applicable) in accordance with the State's request not to exceed the amount approved for each fiscal year of this Agreement.

J.A. 220. Under the subheading "Payment of Reimbursable Costs," Section 6.4.B of the Agreement further provides:

[Interior] will reimburse the State for approved costs incurred under this Agreement in accordance with 43 CFR 12(A) Administrative and Audit Requirements and Cost Principles for Assistance Programs.

J.A. 228.

Finally, under the heading "Cost Understandings," Section 6.5 of the Agreement provides in relevant part:

B. Salaries and Wages - Compensation to personnel which are charged as a direct cost under this Agreement, like other costs, will be reimbursable subject to the following additional understandings:

(1) Salaries and wages may not exceed the State's established policy and practice including the established pay scale for equivalent classifications of employees whose salaries are financed from non-Federal sources, which will be certified by the State, nor may any individual salary or wage exceed the employee's annual rate of compensation for similar functions performed immediately prior to employment hereunder . . . .

(2) Salaries and wages paid while in travel status will not be reimbursed for a period greater than the time required for travel by the most cost effective means.

C. Fringe Benefits [-] Fringe benefits *shall be allowed* in accordance with *the State's established accounting system*.

J.A. 229–30 (emphasis added).

In 2015, Interior sent a report alleging California had overbilled for certain salary, fringe benefits, and indirect costs under the Agreement. J.A. 130 (Draft Attestation

Engagement Report).  Interior claimed it overpaid California by $296,459.94 from FY 2011 to FY 2014.  *See id*.  It withheld payments to recoup the allegedly overbilled amount.  California opposed the withholding, but Interior issued a final report denying California's protest.  California then filed an appeal with Interior on the grounds it used the State's established accounting system to properly calculate the relevant costs.  The appeal was denied.

Following transfer from district court, California proceeded with its complaint before the Court of Federal Claims in March 2017.  California alleged breach of contract.  *See* J.A. 37–41.  California sought a declaration that Interior breached the Agreement "by unilaterally adopting and imposing a different method of accounting for allowable costs rather [than] calculating them under California's [State Administrative Manual (SAM)] method as specifically allowed under the Agreement."  J.A. 40.  The parties filed cross-motions for summary judgment on the contract interpretation issue.  The Court of Federal Claims agreed with Interior's interpretation.

California now appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

II

We review the grant of summary judgment by the Court of Federal Claims de novo.  *TEG-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1336 (Fed. Cir. 2006).  Contract interpretation is a question of law, which we also review de novo.  *Id*.

This case presents a single issue of contract interpretation.  Below, the Government argued that the method California used to bill for certain costs under the Agreement was improper.  California used the SAM formula, which relies on accrual accounting for calculating fringe benefits and overhead.  In other words, the SAM formula accounts for certain accrued benefits before they are paid out to

employees. In the Government's view, California was required to use OMB's method. According to the Government, the OMB method only recognizes actual cash expenditures (e.g., actual payments to employees). The Court of Federal Claims agreed with the Government, concluding that the contract is "unambiguous" and required California to bill only for cash expenditures. J.A. 20. On appeal, California argues that the plain language of the contract expressly allowed it to use the SAM method of accounting for the disputed benefits. We agree with California that the Court of Federal Claims erred.

We begin with the plain language of the contract. *See Hercules Inc. v. United States*, 292 F.3d 1378, 1380 (Fed. Cir. 2002). Section 6.5.C of the Agreement unambiguously provides: "Fringe Benefits [-] Fringe benefits shall be allowed in accordance with the State's established accounting system." J.A. 230.

The Government does not meaningfully dispute that the method California applied—the SAM formula—is recited in the State Administrative Manual for calculating fringe benefits. Nor does it dispute that this has been California's established accounting practice for the last thirty years. *See* J.A. 4. Furthermore, the Government concedes that "California multiplied the [SAM] rate by *actual* hours worked on this cooperative agreement." Appellee's Br. 7.

Instead, the Government only takes issue with the SAM formula itself because it uses accrued costs rather than actual cash payments. But nothing in the contract requires actual cash payments for reimbursement. Instead, the plain language of the contract explicitly permits California to use the SAM formula, which is part of "the State's established accounting system" under Section 6.5.C. When the contractual language "is unambiguous on its face, our inquiry ends and the plain language of the Agreement controls." *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1040–41 (Fed. Cir. 2003).

Accordingly, the Court of Federal Claims erred in concluding the State's use of the SAM formula to calculate fringe benefits was improper under the Agreement.

## III

The Government mounts three main arguments as to why California's SAM method remains improper. None are persuasive. First, it argues that OMB provisions incorporated by reference in Section 6.4.B control, overriding Section 6.5.C. Second, it avers that the contract's language about "costs incurred" and "reimbursement" limit the scope of state accounting practice authorized under Section 6.5.C to cash outlays. Third, it argues California's SAM method results in overcompensation.

The Government's first argument relies on the general provision in Section 6.4.B, which provides that "costs incurred under this Agreement must be in accordance with 43 C.F.R. 12(A) Administrative and Audit Requirements and Cost Principles for Assistance Programs." J.A. 228. It then claims California's billing "runs afoul" of OMB circulars incorporated by reference into the Agreement under 43 C.F.R. Part 12(A). Appellee's Br. 14. In particular, the Government claims "OMB Circular A-87 contains many cost principles and standards, including principles and standards related to the costs at issue in this case, and factors affecting allowability of costs, such as reasonableness and allocability." *Id.* at 15.

As an initial matter, the Government fails to substantively discuss any provision in the OMB Circular A-87 that purports to clearly support its claim that California's SAM formula offends OMB practice. *See generally id.* Indeed, the Government appeared to concede at oral argument that no provision expressly precludes accrual accounting. Oral Argument at 26:18–27:35, No. 2018-1555, http://www.cafc.uscourts.gov/oral-argument-recordings.

Regardless, even if OMB practice could be read to exclude accrual accounting, the reference to OMB practice in the more general provision of Section 6.4.B does not control. Section 6.4.B recites a general provision about allowable costs, while Section 6.5.C recites a specific provision authorizing the use of the State's accounting method for a particular type of allowable cost—i.e., fringe benefits. It "is settled law that where an agreement contains general and specific provisions that conflict, 'the provision directed to a particular matter controls over the provision which is general in its terms.'" *L.W. Matteston, Inc. v. United States*, 61 Fed. Cl. 296, 307 (Fed. Cl. 2004) (quoting *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 980 (Ct. Cl. 1965))*; see also Hills Materials Co. v. Rice*, 982 F.2d 514, 517 (Fed. Cir. 1992) ("Where specific and general terms in a contract are in conflict, those which relate to a particular matter control over the more general language.").

The Government also takes the view that fringe benefits could be allowed using California's established accounting system, but only if they are also in accordance with OMB methods. The Court of Federal Claims implicitly adopted this reading, treating "the State's established accounting system" in Section 6.5.C as adequate grounds to award fringe benefits only to the extent the practice complies with OMB practice incorporated in Section 6.4.B. J.A. 19 (finding "the administrative regulations and cost principles prescribed in OMB Circular A-87, however, still applied to the [State]'s requests for reimbursement, even if the [State] chose to bill utilizing California's State Administrative Manual").

Such an interpretation would, however, require rewriting Section 6.5.C. As discussed above, Section 6.5.C expressly states fringe benefits "shall be allowed" in accordance with the State's established accounting system. "[S]hall be allowed" is a sufficient condition. Contrary to the Government's view, the Agreement does not recite a necessary criterion for recovering fringe benefits. The

specific provision in Section 6.5.C states that fringe bene-
fits are allowed as long as they comport with California's
established practice. The Government fails to explain why
Section 6.5.C deserves less force and effect than any other
provision in the Agreement.

The Government's second argument is that the con-
tract was only designed to reimburse California for actual
costs "incurred." Appellee's Br. 6, 12. In the Government's
view, "incurred" means costs that are accounted for when
they are paid out (i.e., according to OMB's method of ac-
counting), rather than "incurred" under California's
method of accounting. As such, it treats OMB's accounting
method as if it is unambiguously written into the contract.
The Government's position is unavailing.

To support its construction, the Government primarily
relies on the phrase "incurred costs" in Section 6.4.B. How-
ever, the Government fails to mention that the full phrase
refers to "costs incurred *under this Agreement*." J.A. 228.
Thus, the use of the word "incurred" does not resolve the
inquiry at hand. We must still analyze whether these costs
"incurred" under the contract are limited to costs actually
incurred by California per employee—i.e., costs that Cali-
fornia already paid each employee—or whether a formula
accounting for accrued costs per employee is acceptable.

Turning to that question, the Government's position is
unsupported. First, there is no language in the Agreement
defining "incurred" costs as actual cash payments only.[1]
Second, nothing in the contract *excludes* accrued costs for
"fringe benefits" as a category of costs that can be "in-
curred" under the Agreement. Indeed, the plain language

---

[1]    The Agreement mentions "actual" costs in two
places, with respect to travel reimbursement and records
maintenance. J.A. 229 (Section 6.5.A(2)); J.A. 231 (Section
7.1.D).

of the contract compels the opposite conclusion: accrued costs for fringe benefits *are* "incurred" under the Agreement. Section 6.5.C expressly authorizes the State to use its own established accounting method to calculate such costs for fringe benefits. Therefore, we reject the Government's attempt to redefine the term "costs incurred" to map directly onto its view that the contract requires cash basis forms of accounting.[2]

Finally, the Government's third argument appears to be that the SAM formula inherently leads to overcompensation. The Government's arguments about overcompensation essentially restate its view that California was permitted to only bill for cash outlays rather than use the accrual methods inherent to the SAM formula. For the reasons already stated above, these arguments fail.

Even if there were some lingering doubt about whether the foregoing issues—OMB rules, costs incurred, or alleged overcompensation—might somehow condition or limit the State's ability to use its own practices as authorized under Section 6.5.C, there is no explanation in the Agreement as to how the State's practices must be modified. At best, the contract would be ambiguous. Any such ambiguity "should

---

[2] Essentially repackaging its argument about "incurred" costs, the Government argues California was only entitled to "reimbursement" for work actually done on the contract, which it insists means that California's fringe benefit costs are capped at the hours of leave it actually paid to its employees. *See* Appellee's Br. 11–12. Like incurred costs, "reimbursement" is not defined. The contract could have specified, as the Government urges, that "reimbursement" requires California to account for every dollar that it actually paid out in a given time period or it cannot be compensated. But the contract used a different mechanism for compensating the State, which allowed the State to use its own accounting practices.

be construed most strongly against the drafter, which in this case was the United States." *United States v. Seckinger*, 397 U.S. 203, 210 (1970).

We have considered the Government's remaining arguments and find them unpersuasive.[3]

In sum, Interior and the State of California contracted for use of state employee labor. In exchange for use of that labor, Interior agreed to reimburse the State for allowable costs. The contract allowed certain costs to be calculated and billed using the State's practice. The State did so. Thus, the Court of Federal Claims erred.

IV

For the foregoing reasons, we reverse the Court of Federal Claims's decision.

**REVERSED**

---

[3] Based on the way the SAM formula is calculated, California contends the entire sum Interior withheld ($296,459.94) implicates fringe benefits. In California's view, its ability to recover the sum therefore turns on the dispute over whether accrual accounting for fringe benefits is allowed under the Agreement. California argues that while Interior's original justification for its withholding purported to break out this disputed sum into salary, fringe benefits, and indirect costs, *see* J.A. 147, its breakdown was inaccurate or arbitrary. *See* Oral Arg. at 9:05–10:10. On appeal, the Government did not provide independent reasons why breaking out the withheld portions in this manner was appropriate. Even if the Government had adequately explained how the SAM formula can be reliably parsed into distinct categories (e.g., "salary"), it does not separately explain why it was justified in withholding these sums in view of the contract's language about costs.